## CONTINENTAL CASUALTY CO. v. CLARK.

No. 8539—Opinion Filed April 30, 1918.

Rehearing Denied June 25, 1918.

(173 Pac. 453.)

### 1. Insurance — Accident Insurance — "Accidental Means"—"Accidental Cause"—Sunstroke.

In an accident insurance policy which provides, "If sunstroke, freezing, or hydrophobia, due in either case to external, violent or accidental means, shall result, independently of all other causes, in the death of the insured within ninety days from the date of the exposure or infection, the company will pay said principal sum as indemnity for loss of life," held, that "accidental means" is used to denote "accidental cause," and in case of sunstroke, if the same was suffered while the insured was engaged in his usual avocation or going about his affairs in an ordinary manner as any other person might have been under like or similar circumstances, and did not intentionally and voluntarily subject himself to an intense heat calculated to produce sunstroke, with the knowledge that it would probably occur, then the sunstroke was suffered from "accidental means" or "accidental cause," within the meaning of the policy.

### 2. Insurance—Accident Insurance — Additional Indemnity Provision — Construction.

In a policy which provides, "Each consecutive full year which this policy shall be carried without default in payment of premium therefor shall add 10 per cent. to the indemnities payable under part II, but the total of such additions shall not exceed 50 per cent." held that, the additional indemnity provided for in this paragraph being for the benefit of the insured. it is incumbent upon beneficiary to show that the payments of premiums were made without default, in order to increase the policy according to this provision. and the fact that the policy was in effect at the date of the death of the deceased did not justify the presumption that the premiums were paid without default.

(Syllabus by West, C.)

Error from District Court, Seminole County; Tom D. McKeown, Judge.

Suit by Mabel A. Clark against the Continental Casualty Company. Defendant's demurrer to the evidence overruled. and verdict directed for plaintiff, motion for a new trial denied, and on plaintiff's motion for a new trial judgment increased, and defendant brings error. and plaintiff brings cross-error. Affirmed.

Keaton, Wells & Johnston and M. P. Cornelius, for plaintiff in error.

Cobb & Cobb and E. L. Harris, for defendant in error.

Opinion by WEST. C. This was a suit instituted in the district court of Seminole county on July 14, 1914, by defendant in error, plaintiff below, against plaintiff in error. defendant below, to recover on an accident insurance contract issued by plaintiff in error to Hartley M. Clark, in his lifetime, naming the defendant in error as beneficiary. The parties hereinafter will be referred to as they appeared in the court below.

On the 16th day of February, 1916, cause was tried to a jury, after the evidence of plaintiff had been introduced. defendant demurred to the evidence, the same was overruled, defendant refused to offer any testimony. and thereupon the court instructed the jury to return a verdict in favor of plaintiff for $2 500. Both parties filed motion for new trial, and upon consideration of the motion for new trial by plaintiff

the court increased the judgment from $2,-500 to $3,000. To review this action of the court the defendant has perfected its appeal. The plaintiff has perfected a cross-appeal complaining of the amount of the judgment.

The evidence adduced by plaintiff tended to show that Hartley M. Clark, the deceased, was a healthy person, and had been a resident of Seminole county about seven years; that on July 19, 1914, in company with George Killingsworth, the deceased drove to the country, a distance of about six miles, it being very dry, warm and dusty, and on the completion of the journey, or about the time of returning home, suffered a sunstroke, from which he died a few days later; and that proof of loss had been made as provided in the policy.

The only question to be determined by the appeal presented by the defendant is the construction of paragraph 4 of said insurance contract, and whether or not under the evidence adduced by plaintiff, the defendant is liable thereunder. Paragraph 4 of said contract is as follows:

"If sunstroke, freezing or hydrophobia, due in either case to external, violent and accidental means, shall result, independently of all other causes, in the death of the insured within ninety days from date of exposure or infection, the company will pay said principal sum as indemnity for loss of life."

"Sunstroke" is defined by the New International Encyclopedia as follows:

"The effect produced upon the body by exposure to intense heat, whether from the sun, from furnaces, or from the atmosphere."

The Universal Cyclopedia furnished this definition:

"Fever due to excessive heat, but most commonly to exposure to the direct heat of the sun; indirect solar heat or artificial heat may have the same effect."

Billing's National Dictionary:

"A popular term for insolation or heat stroke."

Gould's New Medical Dictionary gives the following definition:

"A condition resulting from exposure to the heat of the sun or to heat from other sources."

A number of other medical dictionaries give practically the same definition.

An "accident" is defined as follows:

"An event that takes place without one's expectation."

"An undesigned, sudden, and unexpected event."

"An event which proceeds from an unknown cause or is an unusual effect of a known cause, and therefore unexpected."

It will be noted that sunstroke, freezing, and hydrophobia are treated in the same paragraph of the contract, which provides that when either is suffered due to external, violent, and accidental means, which result, independent of all other causes, in the death of the insured within 90 days from the date of the exposure or infection, the company will pay said principal sum as indemnity for the death or loss of life; and, when considered together and in the light of their connection with each other, it seems to us that the same conditions surrounding either of the injuries above referred to in this clause of the contract fixing liability on the company should be the same. It is easy to understand that hydrophobia, which is due generally to a bite of an animal, would be suffered by accidental means, unless the insured should intentionally subject himself to the bite of an animal suffering from hydrophobia. It is equally clear that freezing would be considered to be due to accidental means should the insured suffer death by freezing in any manner save and except when he subjected himself to a condition of the weather or climate which would necessarily convey to a man of ordinary intelligence death by such action.

"Accidental means," as used in the policy, as we understand it, denoted "accidental cause." "Means" and "cause" could be and were intended to be interchangeably used in this policy, and so that, if the sunstroke was suffered while the insured was engaged in his usual avocation or going about his affairs in an ordinary manner as any other person might have been under like or similar circumstances, and did not intentionally and voluntarily subject himself to an intense heat, calculated to produce sunstroke with the knowledge that it would probably occur, then we could say that the sunstroke was suffered from accidental means or accidental cause; that is to say, that "sunstroke," as used in the policy and as understood by the insured, was treated in the nature more of an accident than as a disease. While the decisions generally, with a few exceptions, hold that sunstroke is a disease, it is not regarded as a disease in the popular mind. In the common understanding of the insuring public it is accounted a kind of violent personal injury, from the very idea of sudden and external force carried by the word. If classed by medical authorities as technically a disease, to none but an expert medical mind would the provisions of this

policy have carried this significance. Particularly is this true, when read in connection with the other two provisions, freezing and hydrophobia, provided for in the same clause of the contract.

We have read some few cases treating upon this subject, none of which to our mind clearly clarify the situation presented by this appeal.

In the case of Continental Casualty Company v. Johnson, decided June 9, 1906, by the Supreme Court of Kansas and reported in 74 Kan. 129, 85 Pac. 545, 6 L. R. A. (N. S.) 609, 118 Am. St. Rep. 308, 10 Ann. Cas. 851, the plaintiff in error in that case being the same as in this, this clause was under consideration:

"The loss of * * * time, as above provided, due solely to * * * sunstroke or freezing due solely to necessary exposure while engaged in his occupation, shall be deemed to be due to external, violent and purely accidental causes and shall entitle the insured to full benefits according to the terms of this policy."

The only question in the Kansas case was as to whether or not any other heat force, other than that of the direct rays of the sun, was covered by the provisions of the policy above referred to; the insured in that case having suffered injury from excessive heat force emanating from a furnace. The second paragraph of the syllabus is as follows:

"In an action upon an accident insurance policy containing a provision that loss of time due to sunstroke should be deemed to be due to external, violent, and purely accidental causes, and should entitle the insured to full benefits according to the terms of the policy, where the plaintiff's claim is based upon a loss which he alleged was due to sunstroke, he is not precluded from recovery by the fact that his disability was occasioned by exposure to the heat of a furnace, not to that of the sun."

In case of Bryant et al. v. Continental Casualty Company, 107 Tex. 582, 182 S. W. 673, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517, the second paragraph of the syllabus is as follows:

"In such case the term 'means' in the phrase 'due to accidental means,' is used in the sense of 'cause,' and the insurer is liable for the death of the insured, caused by exposure to the sun and humid atmosphere on a hot day, while pursuing his usual vocation in an ordinary way."

In the body of the opinion the court uses the following language:

"If sunstroke is a disease, as the casualty company here contends, that is, a kind of brain fever, and was so dealt with in the present policy, its contraction, as we may in this connection call it, from exposure to excessive heat, its accepted inducing cause, must be regarded as proceeding from a purely natural cause, just as the contraction of malaria from subjection to the conditions which produce that form of disease is recognized as due to a natural cause. Regarded as a disease, and as thus naturally produced, there is no element of bodily injury about it, any more so than there is in the ordinary disease of malaria. Neither, in this view, would sunstroke be any more the proper subject of risk in an accident policy than would malaria; nor would the proper basis of liability under such a policy be any more furnished by death resulting from it than by death from malaria.

"The history of accident insurance, as found in the many judicial decisions upon the subject, reveals the constant denial by ordinary form of policy, for disease, though accidentally effected, unless proximately caused by a bodily injury, and their constant maintenance of the proposition that any other theory of their liability is opposed to the general scheme of accident insurance. This position, generally, has been sustained by the courts; close questions having at times arisen as to whether the given physical condition was to be properly deemed a bodily injury. Not only, therefore, is insurance against disease, as such, not within the general scope of accident insurance, but equally disease effected by accident is not within its theory, as its interpretation by accident companies is disclosed in the decisions, unless there is distinctly present the element of bodily injury.

"Under the contention of the casualty company the sunstroke provision of its policy is a plain contradiction of this essential principle of the character of insurance it is intended to provide. It is a repudiation of the general insuring clause of the policy, as expressing the kind of risk which the policy covers, the risk of 'personal bodily injury * * * effected by external, violent, and accidental means.' Accepting the company's construction of the policy, it is in the position, in the first place, of making a disease, rather than a bodily injury, the subject of an accident risk, and, further, a disease, the accidental causing of which in the way it says is necessary in order for it to be accidentally effected, would present no element whatever of bodily injury, with the accident, in truth, not directly causing the disease, but, at most, only producing a condition favorable for its being incurred.

"Hydrophobia is a disease. But its common cause is the bite of an animal, a bodily injury; and its inclusion in the policy is therefore to be logically accounted for. It is generally thought of as a kind of casualty. But why was sunstroke here made the subject of accident insurance, in which the nature of

the risk is some form of bodily injury, if in the construction of the policy it is to be considered as a disease, and is hence without any element of bodily injury in its cause? It was in our opinion expressly designated as a risk, not as a disease, but for the purpose of avoiding the effect of those decisions which have held it to be a disease. in adoption of its popular conception as a species of personal injury, capable of accidental occurrence, and therefore properly. a subject of this kind of insurance."

The evidence in this case discloses that the deceased was not engaged in any unusual, extraordinary undertaking or any violent or extraordinary physical exertion upon the day he suffered the sunstroke from which he died. He was merely going about his affairs in an ordinary manner, engaged upon this day as any other person might have been under like circumstances.

There was no external, violent, and accidental cause which contributed to the sunstroke suffered in the sense as contended by plaintiff in error. As, for instance. if the deceased had gone out in a top buggy on the day in question and accidentally run against a limb and knocked the top off, and by reason of this more direct exposure to the sun's rays than was contemplated by him upon the beginning of his journey, this would have been an accidental means which contributed to the accidental result, or if he had had a runaway and been compelled to walk in the hot sun for a long distance, that would, as they contend, have been an additional means which resulted in or contributed to an accidental result, or if he had had a runaway and suffered an injury from which he had been compelled to lie in the sun, and thereby suffered the sunstroke, then that would be an accidental means which produced the accidental result, or any other unforeseen accident, which increased the liability of the deceased to suffer sunstroke not contemplated by him upon the beginning of his journey, then it is admitted that the company would have been liable.

We do not concur in this view. In the first place, when you consider sunstroke in connection with freezing and hydrophobia, as stipulated in the contract, and the further fact that sunstroke is an accident, that is, "it is an event that takes place without one's foresight or expectation;" "an undesigned and unexpected event;" "an event which proceeds from an unknown cause or an unusual effect of a known cause, and therefore unexpected"—was it not covered by the contract? Insurance contracts should be construed, where there is doubt as to

their exact meaning, against the insurer and in favor of the insured. These contracts are the contracts of insurance companies and are drawn with a great deal of care, and always, in light of the various judicial constructions placed upon them, they are often changed as appears to have been done by the plaintiff in error in this case, as will be noted by a comparison of the contract before us, and the one in the Kansas case hereinbefore referred to. They are drawn to invite the most favorable consideration of the insuring public with as little liability as possible. And as was said, the provisions generally of insurance contracts are so drawn as "to make promise to our ear and break it to our hope."

In view of the mechanical construction of paragraph 4 of the contract in question in placing sunstroke, freezing, and hydrophobia in the same paragraph and providing that in case of death caused by either due to external, violent, and accidental means the company would pay the prinicpal sum as indemnity for loss of life, it being so very apparent that, if deceased had lost his life by freezing in such a way that death from said cause was without insured's expectations or was undesigned by him, or was an unusual happening from a known cause, the liability of the company would have been fixed and established, and this would have been true had deceased lost his life by hydrophobia, then why not when death resulted from sunstroke? Was not the sunstroke suffered by the deceased an event that took place without his expectation, undesigned and unexpected? Is not this the reasonable construction to place on this contract, in the light of its context? If not, why was it placed in the same paragraph with the other two diseases or injuries, whichever you are pleased to call them, requiring this particular construction? To place any other construction upon this feature of the liability assumed by the company would practically read it out of the contract; and we therefore hold that, inasmuch as the evidence tended to show that the deceased on the day in question was going about his affairs in an ordinary manner, was engaged in no unusual or unnecessary exposure, and the sunstroke was without the expectation of the insured, was undesigned by him, and was an unusual happening, the same was suffered by "external, violent, and accidental means" within the meaning of the policy; and we accordingly hold that the defendant was liable upon this contract under the evidence adduced at the trial.

Upon the cross-appeal of the plaintiff the only question to be determined is the amount of the recovery, and in order to determine the same it will be necessary to notice the evidence in connection with the following clause of the contract:

"Each consecutive full year which this policy shall be carried without default in payment of premium therefor shall add 10 per cent. to the indemnities payable under part II, but the total of such additions shall not exceed 50 per cent."

That is, it was provided in the contract that each consecutive full year which said contract was carried without default in payment of premium there should be added 10 per cent. to the indemnity payable; in other words, the face of the policy, which was originally $2,500, would be increased $250 each year that the premium was paid without default until the same should be increased 50 per cent. or to the amount of $3,750.

It is a general proposition of law that a condition precedent to plaintiff's right to recover or determining the amount which he may recover must be pleaded and proven, in order to make out his case; while a condition subsequent is generally a matter of defense, and plaintiff is not required to allege and prove same. In other words, as we understand it, it was a condition precedent in order for the policy to be increased $250 a year that the premium should be paid without default.

"A condition precedent in a contract is an act to be performed by one party before the accruing of a liability of the other party, and it must be pleaded and proved." Chit. Cont. (11th Am. Ed.) 1083.

"A condition which must be performed before the agreement of the parties becomes a valid and binding contract is a condition precedent, and must be alleged in the declaration or complaint, and performance thereof proved by the plaintiff, or he cannot recover on the contract. This rule is elementary. The reason of the rule is that performance of the condition is a constituent and indispensable part of the right of action. The condition being unperformed, there is not, and never was, any cause of action." Gould on Pl. c. "f," § 13.

"A condition precedent calls for the performance of some act or the happening of some event after the terms of the contract have been agreed upon before the contract shall take effect; that is to say, the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs. Hence it is said: 'A condition precedent doth get and gain the thing or estate made upon condition by the performance of it, as a condition subsequent keeps and continues the estate by the performance of the condition.' " Jacob's Law Dic. "Condition."

In other words, this clause of the contract being for the benefit of the insured and inuring to him only upon condition that he perform certain acts as specified in the contract the burden was naturally upon plaintiff to show by the evidence that the premiums had been paid without default. She did introduce evidence to show that the last two years the premiums were paid when due without default, but as to whether or not the premiums for the first three years were paid when they became due was not apparent.

It is our opinion that in order to recover under this clause of the policy any additional benefits it was incumbent upon the plaintiff to show that the premiums had been paid promptly without default, and in the absence of such proof the plaintiff could not recover this additional indemnity for the three years that the evidence failed to show that the premiums had been paid without default.

Inasmuch as the court rendered judgment for the two years which the evidence showed there was no default in the payment of the premiums, we accordingly hold that the court committed no error in refusing to enter judgment for the additional indemnity for the three years that the evidence of plaintiff failed to show the premiums were paid without default.

Finding no error, judgment of the lower court is in all things affirmed.

By the Court: It is so ordered.