### L. C. KIMSEY HEATING & PLUMBING CO. et al. v. HOUSE et al.

No. 22218.   Opinion Filed Oct. 20, 1931.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

Holden, Brown & Coe, for respondents.

CLARK, V. C. J.   This is an original ac-

tion filed in this court by L. C. Kimsey Heating & Plumbing Company and United States Fidelity & Guaranty Company, petitioners, against John House and State Industrial Commission, respondents, to review an award of the State Industrial Commission made and entered on the 6th day of March, 1931, as follows:

"1. That on August 18, 1930, the claimant, John House, was in the employ of the L. C. Kimsey Heating & Plumbing Company, and engaged in a hazardous occupation subject to and covered by the Workmen's Compensation Law, and that on said date he received an injury by becoming overheated while digging under ground.

"2. That the average daily wage of claimant at the time of said accident was $3.20.

"3. That, as result of said aforementioned accidental injury, claimant has since August 18, 1930, and still is, temporarily totally disabled from the performance of ordinary manual labor.

"The Commission is of the opinion: By reason of the foregoing acts, that the claimant is entitled to temporary total compensation from August 18, 1930, to the date of this order, being 28 weeks less the 5-day period, at the rate of $12.31 per week amounts to $344.68; and that he is to be paid continuing compensation of $12.31 per week until further ordered by this Commission.

"It is therefore ordered: That within 15 days from this date, the respondent pay the sum of $344.68, which is temporary total compensation from August 18, 1930, to March 6, 1931, or 28 weeks exclusive of the five-day waiting period, at the rate of $12.31 per week; and to continue weekly payments of $12.31 until further ordered by this Commission, and pay all medical bills incurred in this case as result of the said injury."

The petitioners, in their brief, raise two propositions for determination:

"Proposition One.

"There is no competent evidence in the record to sustain the finding of the Commission that the claimant sustained an accidental personal injury arising out of and in the course of his employment."

Respondent testified at the hearings had in this cause that on August 18, 1930, he was working for the L. C. Kimsey Heating & Plumbing Company, petitioner herein, and had been working for them for ten or eleven days. That his work consisted of digging ditches. That on the 18th day of August, which was a very hot day, he was working in a ditch about eight feet deep and about two feet wide, and was working ahead of the men laying pipe, and that there was no possible chance of any air down in the ditch. That he worked until 3 o'clock in the after-

noon, when the heat became too much for him and he came up several times and went back in, and left the work about 4:30 and arrived home about 5 o'clock and did not have much appetite, did not eat anything, and became dizzy and went outside, and at about a quarter to 6 became unconscious and was taken immediately to a hospital. That the overheating came to him suddenly while he was in the ditch, and that he felt very weak and seemed to be perspiring very much and had difficulty in breathing. That his average wage was $3.20 per day. That prior to the 18th day of August he had never experienced any physical disability of this nature, and had always been an able-bodied man physically, and was a laboring man and always did a day's work. That since said date he has had dizzy and fainting spells; that he has not worked since the date of the injury; that he has difficulty from his heart; that the least little thing he lifts causes difficulty in breathing, and that he has not been able to work since said date.

Dr. O. W. Wright testified in part that he was called to see respondent on or about the 18th day of August, and that he was suffering great pain in his chest and shortening of the breath and he could not get a good breath and that his chest was heaving; that the was conscious to some extent, but not wholly, and that he sent him to a hospital. Taking the history of the case as given him, that he attributed respondent's rapid heart action to the overheating occasioned by having worked in the ditch; the overexertion in the heat. And from his examination respondent was suffering from overheating and from exertion caused during that day.

Dr. John A. Roddy testified that a man working in a ditch eight feet deep and two feet wide, in the month of August, hot weather, and from the location of this country, could have a heat exhaustion and be overcome by heat, and gave the distinction between heat stroke sometimes called sunstroke and heat exhaustion, as follows:

"Heat stroke is a disturbance of the head, regulating the body, which causes a high fever. Heat exhaustion is a condition of shock, with a subnormal temperature, and things that bring this about, or one of the essential things is heat. * * *"

Dr. Le Roy D. Long testified:

"Q. Doctor, what is the effect of becoming overheated in work of that kind? A. Well, becoming overheated is a lay expression, but it is a good one. The effects of heat on the body may take two forms, one form is called hypertension, and in that par-

ticular form the patient has a subnormal temperature and has increased temperature; and the other form is so-called traumatic fever, where there is an alarming temperature up to 175 and necessitates dumping these people into an ice tub and bringing the temperature down to within reasonable limits. * * * Q. Does overheating and over-exertion, or any of these forms you speak about, do they in any way affect the heart action? A. Yes."

Dr. C. D. Moore testified:

"The thing that impresses me most about this case was not what I found so much, as what he told me. He had given here quite a typical case or history of sunstroke, or heat exertion, rather—probably heat exertion and not sunstroke in this case, as it appeared to me, so in view of the history he gave me, in the first place, it seems he must have suffered from heat exertion, and the history he related is such a typical one, I am convinced that is true, and also in all probability he still is suffering from this heat exertion."

In the case of Sinclair Pipe Line Co. v. State Industrial Commission, 134 Okla. 300, 272 P. 1030, in the second paragraph of the syllabus, this court said:

"An injury arises out of and in the course of employment when there is a causal connection between the conditions under which work is required to be performed and the resulting injury. It must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

And in the case of Cowan v. Watson, 148 Okla. 14, 296 P. 974, in the first and third paragraphs of the syllabus, this court said:

"1. If the place of the employee's work, by reason of its location and nature, would likely expose him to the danger of sunstroke or if the risk of injury by sunstroke is naturally connected with, and reasonably incidental to, his employment, as distinguished from the ordinary risk to which the general public is exposed from climatic conditions, the master will be liable for the consequential injury."

"3. The term "accidental injury," as used in the Workmen's Compensation Act of this state, must not be given a narrow meaning, but * * * is to receive a broad and liberal construction, with a view to compensating injured employees.' Hidden Treasurer Coal Co. v. Urist, 112 Okla. 245, 240 P. 640."

In the Cowan Case, supra, the employee testified that he became overheated and apparently had a sunstroke, and as a result therefrom became unconscious.

In the case at bar the respondent was working in a ditch eight feet deep and two feet wide on a very hot August day and became overheated and became weak and dizzy and after arriving at home became unconscious.

With reference to the question whether or not "heat exhaustion" is compensable under the Workmen's Compensation Law, the Illinois Industrial Board held in the case of Kringle v. Meyers, 12 Negligence and Compensation Cases, Annotated, at page 318, as follows:

"* * * That the character and nature of the injury and the result thereof is as follows: 'Heat prostration due to digging in a trench while engaged as a laborer for a plumber, * * * and that the employer contends that this occurrence is not an accident arising out of the employment under the Workmen's Compensation Act. * * * And that the employee claims that he is entitled to compensation under the act. The Board regarded the question at issue as a difficult one, but was of the opinion that the weight of authority was with the claimant's position. * * * It seems to be the rational and reasonable conclusion that, had he not been in the employ of the respondent, working at the time and place and manner stated, the prostration would not have occurred. Therefore, the Board was of the opinion that it was an accident within the Compensation Act; * * * that the injury arose out of and occurred in the course of the employment. * * *"

Also, in the case of Patten Hotel Co. v. Milner (Tenn.) 238 S. W. 75, the court said, in the first paragraph of the syllabus:

"Where a cook employed in a hotel kitchen became overheated and fainty, and stepped into the alley to get fresh air, fainted and fell, and his arm was run over by the wheels of a passing truck, from which injury he died, and it was shown that the kitchen was always warm, and it was necessary for employees to step into the alley for air, the fainty condition arose out of employment and a causal connection between the employment and injury appeared justifying recovery under the Workmen's Compensation Act."

And in the body of the opinion the court said:

"The deceased's overheated and fainty conditions arose out of his employment, and it was on account of this condition that he became exposed to the danger which produced the injury. We, therefore, think the necessary causal connection between the employment and the injury appears."

We are of the opinion that the injury by heat exhaustion of the respondent in the case at bar was occasioned by reason of the location and nature of the work of the respondent, and reasonably incidental to his employment, as distinguished from the or-

dinary risk to which the general public is exposed from climatic conditions, and that the evidence is amply sufficient to establish the fact that respondent did sustain an accidental injury arising out of and in the course of his employment with petitioner.

Petitioners' second proposition is:

"There is no competent evidence to show that the claimant was totally disabled on the day of the last hearing in this cause."

The respondent, John House, testified with reference to his total disability on day of hearing, in substance:

"Q. Have you worked any since that day? A. No, I haven't been able. A. What is the nature of your ailment at the present time? A. I have difficulty with my heart. Q. Do you feel able to work? A. No, sir; I do not. Q. Tell the court, John, whether or not you have any attacks in your heart now, of any kind. A. I cannot seem to do any work at all, the least little thing that I lift causes difficulty in breathing and I experience pain around my heart, and we had a cold spell some little time ago and my left side seemed to be paralyzed after a nice bath. * * * Q. You do not know whether you could work or not? A. I don't feel in the condition to."

E. R. House, father of the respondent, testified in substance: That before the injury complained of his son always appeared to be a healthy, hard-working boy and that he had never known of him having trouble with his heart before the date of the injury complained of, and that after that time he had dizzy spells and complained of pain in his breast and that it seemed his left arm and shoulder and whole left side of his body were paralyzed. That since he received the overheating, on one occasion when respondent was helping clean the car it was five minutes that respondent could not get his breath; and as to whether or not respondent is or is not able to work, the witness said he only knows that from what he sees and from what the doctor tells him.

Mrs. E. R. House, stepmother of the respondent, testified, in substance, as to the respondent's condition since the injury, that he had fainted several times and complained all of the time of his heart and that he never complained before the overheating occurred.

Dr. O. W. Wright testified, in substance, regarding the respondent's present condition, that he attributed it to over-exertion and overheating. That the respondent might do some ordinary physical manual labor, but he did not think he could do heavy labor, and that he had cautioned respondent to take care of his heart until his trouble is over with, and further stated in answer to the question:

"Q. Has John been able since he has been under your care to do ordinary physical manual labor? A. Well, I don't think so."

And further testified that he attributed his disability of being unable to work, in the first place, to high blood pressure, and that it was his idea that the high blood pressure resulted from the overheating and over-exertion that the respondent received on August 18th, and that he advised further rest for sometime.

Dr. LeRoy D. Long testified as follows:

"Q. Does overheating and over-exertion, or any of these forms that you speak about, do they in any way affect the heart action? A. Yes."

Dr. C. D. Moore testified, in substance: That it was his opinion that the respondent has been totally disabled ever since the accident and will continue this total disability for a while and that it would be awfully hard to answer as to the length of time of the total disability.

We are of the opinion that there is competent evidence to show that the respondent was temporarily totally disabled on the date of the last hearing before the Industrial Commission, and where there is any competent evidence to support the award of the Commission, this court will not weigh the evidence upon which any finding of fact is based.

Judgment and award is affirmed.

LESTER, C. J., and RILEY, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. HEFNER and ANDREWS, JJ., absent.