## PAIST v. ÆTNA LIFE INS. CO.
### No. 15144.

District Court, E. D. Pennsylvania.
Nov. 12, 1931.

Robert T. McCracken, of Philadelphia, Pa., for plaintiff.

Paul Reilly, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a motion by the defendant for a new trial. The suit is to recover the double indemnity upon a policy of life insurance in the amount of $50,000, containing the following provision: "If the death of the insured * * * results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means * * * and if such accident is evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning and internal injuries revealed by an autopsy), and if such death does not result * * * directly or indirectly from disease in any form, then the Company will pay a sum equal to the sum described in this policy as the sum insured in addition thereto."

The evidence supports the finding of the jury that the insured died as a result of a sunstroke sustained while playing golf on a hot afternoon in September. (Maximum temperature 89; humidity high.)

Under the clause quoted above, there are five conditions precedent to the beneficiary's right of action (omitting certain provisions concededly not applicable in this case):

First. The death of the insured must occur.

Second. The insured's death must result from bodily injuries (a) directly, and (b) independently of all other causes.

Third. The insured's death must not result directly or indirectly from disease in any form.

Fourth. The bodily injuries must have been effected solely through external, violent, and accidental means.

Fifth. "Such accident" (obviously referring to the bodily injuries occurring from the required means) must be evidenced by visible contusions or wounds on the exterior of the body.

The first condition was fulfilled.

As to the second and third: The evidence shows that the insured's death resulted from a lesion or lesions of the blood vessels of the brain producing cerebral hemorrhage. These lesions were bodily injuries within the meaning of the policy, and the evidence supports the finding that death resulted from them directly and independently of all other causes. It follows that the death did not result from disease. The great weight of authority is that sunstroke itself is not a disease, but an occurrence of a violent nature caused by an external force. It may be

true that cerebral hemorrhage is sometimes referred to as a disease and the words are often understood to be synonymous with apoplexy; but if a disease in the true sense, it is merely an incidental consequence of the sunstroke just as, in cases of stab wounds, hemorrhage of some vital organ or infection, while the immediate cause of death, is invariably held to be incidental only and not the kind of contributing cause barred by the policy. See Ætna Life Insurance Co. v. Allen (C. C. A.) 32 F.(2d) 490; Western Comm. Trav. Ass'n v. Smith (C. C. A.) 85 F. 401, 40 L. R. A. 653.

■ Coming to the fourth condition: Were the injuries effected solely through external, violent, and accidental means as required by the fourth condition? The "means" were the group of phenomena comprising the incidence of the sun's rays, the reaction of the central nervous system, the engorgement of the blood vessels of the brain, and the other physical effects, all of which combined go to make up what is generally known as sunstroke.

The means were external and violent. I am not aware of any decision in a sunstroke case holding otherwise. Were they accidental? Upon this question there is a conflict of authority arising from the alignment of the courts upon one side or the other of the fundamental question, What constitutes an accident? Of course, the mere fact that an occurrence would not have happened but for some voluntary act of the insured does not prevent it from being an accidental occurrence. But whether there must be, in addition, the occurrence of something unforeseen, unexpected, or unusual in the act itself of the insured which precedes the injury, or whether the mere fact that the injury is not the ordinary, natural, and probable consequence of the act is sufficient to make it an accident, is the point upon which authority is divided, and it is the vital point upon the question here.

In this case there was nothing unforeseen, unusual, or unexpected occurring in connection with any act of the insured, prior or contributing to the injury, as there was in Richards v. Standard Accident Insurance Co., 58 Utah, 622, 200 P. 1017, 17 A. L. R. 1183, where, by reason of a miscalculation or of misinformation as to the distance to be traveled, the insured was compelled to spend a considerable time under a desert sun without sufficient water. Here, the only unexpected thing was the injury itself. Hundreds, probably thousands, of persons played

golf upon the same day in and about Philadelphia, subject to the same conditions of heat and humidity, without being any the worse for it.

The two conflicting views upon the point in question are well set out in the opinion in Caldwell v. Travelers' Insurance Co., 305 Mo. 619, 267 S. W. 907, 908, 39 A. L. R. 56, as follows: "There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen. The other line of cases holds that, where injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event which caused such injury or death."

Whatever may be the weight of authority among courts of the various states, I feel that I am bound by the decision of the Supreme Court of the United States in U. S. Mutual Accident Association v. Barry, 131 U. S. 100, 9 S. Ct. 755, 762, 33 L. Ed. 60, to adopt the former of these views. In that case the insured jumped from a platform four or five feet from the ground and died shortly thereafter as a result of some displacement of the duodenum attributable to his descending or alighting unexpectedly in such a manner as to twist or wrench his body. The instructions of the court below which were expressly approved were that: "The question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground * * * that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means." It will be noted that the court did not say, "if a result is such as *ordinarily or probably* follows from ordinary means," etc., but simply that if it follows from such means; also, that the something unforeseen, unexpected, or unusual which makes the hap-

pening an accident must occur "in the act which precedes the injury."

Though there are some irreconcilable decisions, this rule has been generally accepted by the federal courts, both in sunstroke cases [Nickman v. N. Y. Life Ins. Co., 39 F.(2d) 763 (C. C. A. 6)], and in other cases involving the general question of accidental means. Shanberg v. Fidelity & Casualty Co. (C. C. A.) 158 F. 1, 19 L. R. A. (N. S.) 1206; Ætna Life Insurance Co. v. Brand (C. C. A.) 265 F. 6, 13 A. L. R. 657; Mutual Life Insurance Co. of New York v. Dodge (C. C. A.) 11 F.(2d) 486, 59 A. L. R. 1290; Pope v. Prudential Insurance Co. of America (C. C. A.) 29 F.(2d) 185. It is also the rule of this circuit. In Preferred Accident Insurance Co. v. Patterson, 213 F. 595, 597 (C. C. A. 3d), the Circuit Court of Appeals said: "We agree that, when a man is injured while doing merely what he intends to do, he is not injured by an accident, unless the course of his action has been interrupted or deflected by some unforeseen and unintended happening." See, also, Maryland Casualty Co. v. Spitz (C. C. A. 3d) 246 F. 817, L. R. A. 1918C, 1191.

While I do not think that the bodily reactions which caused and constituted the injuries in this case can be said to have been a natural or probable result of the insured's exposure to the sun's rays, nevertheless the insured's voluntary act was not complicated by any unforeseen, unexpected, or unusual occurrence. I therefore conclude that the means effecting the injuries which resulted in the insured's death in this case were not accidental.

I am also of the opinion that there is no evidence in this case of a visible contusion or wound upon the exterior of the body. To hold that a flushed, sunburned face is a wound or contusion would be straining language far beyond any reasonable meaning which could be assigned to it. It might be just possible to bring it under the definition of wound given by the Century Dictionary as the meaning of the word in medical jurisprudence and cited by the plaintiff, but in insurance policies courts have again and again refused to adopt technical definitions and have adhered to the ordinary and popular meanings of words used. There is no reason why this rule should not work both ways. Certainly, in ordinary parlance "contusion" is almost exactly synonymous with "bruise," and to say that a flushed countenance is a wound would go beyond the limit of allowable interpretation.

I therefore grant the motion for a new trial upon the sole ground that under all of the evidence in the case the plaintiff was not entitled to the verdict.