CLARA H. LOWER, PLAINTIFF-APPELLANT, v. THE METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellant, *Theodore D. Parsons.*

For the respondent, *Clifford I. Voorhees.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR. The judgment under review resulted from a trial of an action upon a policy of insurance. The cause was tried, by agreement, before the trial judge without a jury upon an agreed state of facts and resulted in the judgment in question in favor of the defendant below.

The facts are not in dispute and we quote them as they are contained in the opinion of the trial judge:

"The circumstances involved are that Francis T. Lower, fifty years of age, a laborer in the employ of one Raub, was on August 4th, 1930, the holder of a so-called double indemnity policy, theretofore issued to him by the defendant-company, and in force, covering life insurance in a stated amount and a like sum in case of death, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means.

"August 4th, 1930, was evidently a torrid day, and in the morning he had been working out of doors at his usual employment, which he resumed after his mid-day meal. At two o'clock the temperature registered ninety-four degrees Fahrenheit. Sometime during the afternoon he suffered a sunstroke, from the effects of which he died."

The contract of insurance provided that the respondent company "hereby agrees to pay to the beneficiary or beneficiaries of record under said policy, in addition to the amount

payable according to the terms of the said policy the sum of one thousand dollars, upon receipt * * * of the proof of the death of the insured, *as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means; provided, * * * (5) that death shall not have been the result of self-destruction, whether sane or insane, or caused by or contributed to, directly or indirectly, or wholly or partially, by disease or bodily or mental infirmity * * *.*"

The learned trial judge, in reaching his conclusion, that death by sunstroke is not "through external, violent and accidental means" held that it is not accidental but is in fact a disease.

We do not reach this conclusion.

This presents two outstanding matters for consideration:

1. Is sunstroke an accident and does the infliction and injury arise from accidental means.

2. Is sunstroke a disease or is it the result of external violence.

Point I. Many cases are cited to us by both appellant and respondent upon this question and they go in both directions.

Measured, however, by the rule laid down by the United States Supreme Court in *United States Mutual Accident Association* v. *Barry,* 131 *U. S.* 100, the great weight of authority is that injury or death by sunstroke, under the admitted facts in the case before us is to be classed as an accident, or as resulting from or effected by accidental means.

This rule appears to be, as said in *Caldwell* v. *Travelers' Insurance Co. (Sup. Ct. Mo.),* 267 *S. W. Rep.* 907, which carefully reviews and critically analyzes a great number of cases, that based upon the Barry case, *supra,* "accidental means" is to be defined, "that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way it cannot be called a result effected by accidental means; but if in the act which precedes the injury, something unforseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means."

Among the cases bearing upon the subject and examined by us are the following: *Continental Casualty Co* v. *Bruden*, 11 *S. W. Rep.* (2d ed.) 493; *Dupree* v. *Atlantic Refining Co.*, 120 *Atl. Rep.* 288; *Elsey* v. *Fidelity and Casualty Co.*, 120 *N. E. Rep.* 646; *Higgins* v. *Midland Casualty Co.*, 118 *Id.* 11; *Hutchinson* v. *Travelers' Insurance Co.*, 8 *S. W. Rep.* 570; *Mather* v. *London Guaranty and Accident Co.*, 145 *N. W. Rep.* 963; *Pace* v. *North Dakota Workmen's Compensation Bureau*, 201 *Id.* 348; *Young* v. *Western, &c., Co.*, 164 *Id.* 712; *Gallagher* v. *Fidelity and Casualty Co.*, 148 *N. Y. Supp.* 1016; *affirmed,* 117 *N. E. Rep.* 1067; *Continental Casualty Co.* v. *Clark,* 173 *Pac. Rep.* 453; *Lane* v. *Horn and Hardart Baking Co.*, 104 *Atl. Rep.* 615; *Walsh* v. *River Spinning Co.*, 103 *Atl. Rep.* 1025; *King* v. *Buckeye Cotton Oil,* 296 *S. W. Rep.* 3; *Bryant* v. *Continental Casualty Co.*, 182 *Id.* 674; *Richards* v. *Standard A. & C. Co.*, 200 *Pac. Rep.* 1017; *Paul* v. *Travelers' Insurance Co.*, 112 *N. Y.* 472; 20 *N. E. Rep.* 347; *Healy* v. *Mutual Accident Association,* 133 *Ill.* 556; 25 *N. E. Rep.* 52; *Hulton* v. *States Accident Insurance Co.*, 267 *Ill.* 267; 108 *N. E. Rep.* 296; *United States Mutual Accident Association* v. *Barry,* 131 *U. S.* 100; 1 *C. J.* 431, § 78; *Caldwell* v. *Travelers' Insurance Co.* (*Mo*)., 267 *S. W. Rep.* 907; *Dozier* v. *Fidelity, &c.* (*United States Circuit Court of Appeals*), 13 *L. R. A.* 114; *Paist* v. *Aetna Life Insurance Co.* (*United States Circuit Court of Appeals*), 54 *Fed. Rep.* (2d) 393.

Among these are some arising under Employers' Compensation acts, and others under contracts of insurance and in the latter class some are where sunstroke is specifically made a bodily injury and others in which it is not. They also have variously involved the question of whether or not sunstroke is a disease and whether or not it is to be classed as an accident or inflicted through accidental means.

It would be an impossible task to classify them and no serviceable purpose could be attained. They are, according to their varying conditions and facts, applicable to both points or grounds argued.

Our attention is not directed to any case in this state other

than those arising out of the Employers' Compensation act and it is represented by counsel there are none.

In the compensation cases cited: *Kauffeld* v. *Pfund* (*Court of Errors and Appeals*), 97 *N. J. L.* 335; *Higham* v. *Preakness Hills Country Club,* 10 *N. J. Mis. R.* 889; 161 *Atl. Rep.* 651, and *George* v. *Waldron,* 111 *N. J. L.* 4, it is held that heat prostration or sunstroke, is an accident arising out of and in the course of employment, as contemplated by the statute "when the *employment* brings a greater exposure than that to which persons generally in that locality are exposed."

These cases are helpful to the extent of showing that our courts have not adopted the idea that sunstroke is a disease but, on the contrary, recognize it as an accident, or a happening taking place by accidental means. In order, however, to bring it within an accident "arising out of and in the course of employment," under the statute, they have said there can be recovery by the employe only "when the *employment* brings a greater exposure than that to which persons generally in that locality are exposed."

Applying the authorities before cited which are applicable, to the facts in the present case, we have reached the conclusion that the death of the insured by sunstroke was an accident ånd occurred through accidental means.

Point 2. Is sunstroke a disease or is it the result of external violence?

Here again the authorities cited are not harmonious but a consideration of all of them brings us to the conclusion that the weight preponderates in favor of the latter insistence.

In passing we say that *Runyon* v. *Commonwealth Casualty Co.,* 109 *N. J. L.* 238, and its companion *Runyon* v. *Monarch Accident Insurance Co.,* 108 *Id.* 489, cited by respondent as controlling in this court respecting the provision of its contract of insurance contained under its fifth exemption or proviso, namely, "that death shall not have been * * * caused by or contributed to, directly or indirectly, or wholly or partially, by disease or bodily or mental infirmity * * *:" are not applicable, because in those cases, although the policy

provision was for liability for death if it resulted, "exclusively from bodily injuries caused solely by external, violent and accidental means" and it was shown that the insured slipped on an icy pavement and broke his hip yet it was further shown that he then was, and, for many years prior thereto, had been suffering from paralysis agitans, which aggravated by his injury, was the cause of his death.

In the case before us there is nothing showing that the insured was suffering from any disease or ailment prior to the sunstroke which latter was admittedly the immediate cause of his death.

We think that this disposes of all questions raised other than that which is the main topic under this point.

The learned trial judge appears to have rested particularly upon the authority of Bryant *v.* Continental Casualty Co., Paist *v.* Aetna Insurance Co., and Dozier *v.* Fidelity and Casualty Co., *supra.*

*Dozier* v. *Fidelity and Casualty Co., supra,* was a cause decided in the United States Circuit Court of Appeals and does hold that sunstroke is a disease but the greater part of the reasoning is devoted to the question of whether or not injury or death therefrom can be said to be due to accident or accidental causes, and in that respect leans heavily upon *Sinclair* v. *Maritime Passengers Assurance Co., 3 El. & El.* 478, where the policy insured against bodily injury "sustained through external violent and accidental means within the meaning of an insurance policy covering injuries but excluding liability for 'any disease or bodily infirmity' 'and against any personal injury from, or by reason or in consequence of, any accident which should happen to him upon any ocean, sea, river or lake.' "

The assured was master of the ship Sultan, and in the course of his voyage arrived in the Cochin river, on the southwest coast of India, and, in the usual course of his vocation, he was smitten by a sunstroke, from the effect of which he died.

It was held that his death must be considered as having resulted from a natural cause, and not from accident within

the meaning of the policy, the court saying, "in the present instance, the disease called sunstroke although the name would at first seem to imply something of external violence, is, so far as we are informed, an inflammatory disease of the brain, brought on by exposure to the too intense heat of the sun's rays. It is a disease to which persons exposing themselves to the sun in a tropical climate are more or less liable, just as persons exposed to the other natural causes to which we have referred (exposure to heat, cold, dampness, malaria or infection) are liable to disastrous consequences therefrom. The deceased, in the discharge of his ordinary duties about his ship, became thus affected and died." This case also turned, largely, if not completely, upon the question of accident.

*Paist* v. *Aetna, supra,* in a policy providing for double indemnity "if death of insured * * * results directly and independently of all other causes from bodily injuries effected solely through external violence and accidental means * * * and if such accident is evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning and internal injuries revealed by an autopsy) * * *," the insured died from sunstroke sustained by playing golf on a hot summer's day and it was held that death did not result from or through accidental means, but does further hold "it follows that the death did not result from disease. *The great weight of authority is that sunstroke itself is not a disease, but an occurrence of a violent nature caused by an external force.* It may be true that cerebral hemorrhage is sometimes referred to as a disease and the words are often understood to be synonymous with apoplexy; but if a disease in the true sense, it is merely an incidental consequence of the sunstroke just as, in cases of stab wounds, hemorrhage of some vital organ or infection, while the immediate cause of death is invariably held to be incidental only and not the kind of contributing cause barred by the policy."

Upon the question of whether the injuries were effected solely through external, violent and accidental means as required by the policy it was held that, "the 'means' were the

group of phenomena comprising the incidence of the sun's rays, the reaction of the central nervous system, the engorgement of the blood vessels of the brain, and the other physical effects, all of which combined to go to make up what is generally known as sunstroke. *The means were external and violent.*"

The remaining case of *Bryant* v. *Continental Casualty Co., supra,* was concerned with a policy specifically naming sunstroke as a bodily injury when due "to external, violent and accidental means."

Although it would seem unnecessary to have done so the court did hold *that sunstroke was not to be considered a disease, "but whatever it may be, technically, it is not regarded as a disease in the popular mind. In the common understanding it is accounted a kind of violent, personal injury, from the very idea of sudden and external forces * * * ."* The court labored most with the question as to whether it was due from "accidental means" reaching the conclusion that it was, applying *United States, &c.,* v. *Barry, supra,* refusing to adopt the opposite reasoning and conclusion in *Elsey* v. *Fidelity and Casualty Co., supra,* but adopting that of *Gallagher* v. *Fidelity and Casualty Co.,* by the Appellate Division of the New York Superior Court, 163 *App. Div.* 556; 148 *N. Y. Supp.* 1016, which was then pending in the New York Court of Appeal and later affirmed by that court. 117 *N. E. Rep.* 1067.

Of the cases brought to our attention by the briefs of the parties and those which we have examined, coming to our notice through our own research, running into a large number, there are comparatively few directly and unconditionally holding that sunstroke is a disease except *Elsey* v. *Fidelity, supra; Dozier* v. *Fidelity, supra,* and *Sinclair* v. *Maritime Passengers' Assurance Co., supra.*

We reach the conclusion that the best reasoning and best authority require a finding, as we do, that under the terms of the present policy sunstroke is not to be classed as a disease.

This conclusion is more strongly impressed upon us when we consider that in *Harris* v. *American Casualty Co.,* 83 *N.*

*J. L.* 641, and *Weiss* v. *Union Indemnity Co.,* 107 *Id.* 348, we held "it is a familiar rule that the words used in a policy of insurance should be interpreted most strongly against the insurer where the policy is so framed as to leave room for two constructions" and that in *Bennett* v. *Van Riper,* 47 *N. J. Eq.* 563, 566, adopting the language of Chief Justice Gibson in *Schuylkill Navigation Co.* v. *Moore,* 2 *Whart.* 491, this court said: "Where there is no fixed or technical meaning which the court must follow in the construction of a contract, then 'the best construction * * * is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it. A result thus obtained is exactly what is obtained from the cardinal rule of intention.' "

So, interpreting the policy of insurance here involved in connection with the facts of this case, we conclude that sunstroke, the admitted cause of death of the insured, is not to be considered as a disease but that such death was the result "directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means * * * " not "caused by or contributed to directly, or indirectly, or wholly or partially, by disease or bodily or mental infirmity * * *."

The judgment under review is therefore reversed, with costs, and the cause remanded to the court below for the purpose of entering judgment in favor of the plaintiff and against the defendant.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Trenchard, Parker, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, Dill, JJ. 15.