## PROVIDENT LIFE & ACCIDENT INS. CO. v. GREEN.

No. 25068.     June 18, 1935.

Utterback & Stinson and Priscilla W. Utterback, for plaintiff in error.

C. C. Hatchett, for defendant in error.

RILEY, J. This is an appeal from a judgment against plaintiff in error, defendant below, upon an insurance policy providing indemnity for loss of life caused by accidental means.

The policy was issued August 17, 1931, to Jacob M. Green, wherein the company insured said Jacob M. Green "against the effects resulting directly and exclusively of all other causes, from bodily injuries sustained solely through external, violent and accidental means * * * in the principal sum of $1,000."

The policy provided that if the death of the insured shall result solely from "such injury, and within 120 days from the date of the accident," the company would pay for the loss of life, said principal sum of $1,000.

The wife, Cora E. Green, plaintiff in this action, was made beneficiary in case of death.

Insured died on July 27, 1932, while the policy was in full force. The beneficiary claimed that the death was covered by the policy. The company denied liability, and this action was commenced to recover said sum.

The petition alleged that said Jacob M. Green died as a result of bodily injuries "sustained solely through external, violent, and accidental means, in that said deceased died of sunstroke"; the claim being that such cause of death is within the terms of the policy.

The policy also provided that the company "shall have the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

Defendant answered by general denial and specifically denied that insured died from bodily injuries sustained by him solely through external, violent, and accidental means exclusive of all other causes, and as an affirmative defense alleged that notice of death was not given until after the body had been interred, and then, within a reasonable time after receipt of notice of death, the company demanded the right and opportunity to make an autopsy, which was denied, and that defendant was thereby precluded from obtaining evidence which would conclusively show the cause of the death of insured.

Reply was a general denial.

The cause was tried to a jury, resulting in a verdict for plaintiff. After motion for new trial was filed and overruled, judgment was entered for plaintiff, and defendant appeals.

There is abundant evidence tending to support the contention of plaintiff that insured died of sunstroke.

The evidence is that insured was a section foreman on the M., O. & G. Railroad; that on July 27, 1932, he, with one man, was engaged in replacing ties on the roadbed, and was working on a cut where the breeze was obstructed. The day was very

592 ·

hot, the temperature being about 108 or 110 degrees F. About 2:30 p. m., after deceased had been shoveling gravel ballast upon the track for some time, he walked a short distance and was in the act of taking hold of an iron bar, when he suddenly collapsed, fell to the ground, and died in a few minutes. He was apparently in good physical condition up to within five or ten minutes before his death.

From the evidence as a whole, it may be said with reasonable certainty that the sole cause of the death was sunstroke.

The principal contention of defendant is that "sunstroke is not an accident within the terms of the policy." The question was raised by demurrer to the petition, demurrer to plaintiff's evidence, and by requested instructions.

The court instructed the jury:

"* * * If you find by a fair preponderance of the evidence that Jacob M. Green came to his death on or about the 27th day of July, 1932, by sunstroke, caused by heat from the solar system or sunrays, while in the performance of his usual duty, then you are instructed that this would be classed as an accident and the plaintiff would be entitled to recover; if you fail to so find, then you should find for the defendant."

The question presented is, Whether death caused solely by sunstroke, in the absence of any accident contributing to or causing deceased to subject himself to the sun's rays, is the effect resulting directly and exclusively of all other causes from bodily injuries solely through "external, violent, and accidental means."

Upon this question the authorities appear to be in hopeless conflict.

In this state the question has been before this court a number of times in workmen's compensation cases, and the rule seems to be well settled that:

"If the place of the employee's work, by reason of its location and nature, would likely expose him to the danger of sunstroke or of the risk of injury by sunstroke is naturally connected with, and reasonably incidental to his employment, as distinguished from the ordinary risk to which the general public is exposed from climatic conditions, the master will be liable for the consequential injuries." Cowan et al. v. Watson et al., 148 Okla. 14, 296 P. 974; Skelly Oil Co. v. St. Indus. Comm., 91 Okla. 194, 216 P. 933; Kimsey Heating & Plumb. Co. v. House, 152 Okla. 200, 4 P. (2d) 59; Sheehan Pipe Line Co. et al. v. Cruncleton, 163 Okla. 205, 22 P. (2d) 112.

This may be said to be the general rule in workmen's compensation cases.

The question was also before this court in an accident insurance case in Continental Cas. Co. v. Clark, 70 Okla. 187, 173 P. 453. The provisions of the policy there under consideration were:

"If sunstroke, freezing, or hydrophobia, due in either case to external, violent, and accidental means, shall result, independently of all other causes, in the death of the insured within 90 days from date of exposure or infection, the company will pay said principal sum as indemnity for loss of life."

In that case, as here, sunstroke resulted in the death of insured. The question presented was whether the sunstroke was due to external, violent, and accidental means. It was there held:

"* * * That 'accidental means' is used to denote 'accidental cause', and in case of sunstroke, if the same was suffered while the insured was engaged in his usual avocation or going about his affairs in an ordinary manner as any other person might have been under like or similar circumstances, and did not intentionally and voluntarily subject himself to an intense heat calculated to produce sunstroke, with the knowledge that it would probably occur, then the sunstroke was suffered from 'accidental means' or 'accidental cause', within the meaning of the policy."

Where that or a similar provision is written into an insurance policy, it is generally held that death due to sunstroke, where the insured was at the time pursuing his usual avocation in an ordinary way, is within the protection of the policy insuring against bodily injuries sustained through external, violent, and accidental means. Bryant v. Continental Cas. Co. (Tex.) 182 S. W. 673, L. R. A. 1916E, 945; Elsey v. Fidelity & Cas. Co. (Ind.) 120 N. E. 42, L. R. A. 1918F, p. 646; Pack v. Prudential Cas. Co. (Ky.) 185 S. W. 496, L. R. A. 1916E. 952.

To the contrary are Semanick v. Continental Cas. Co., 56 Pa. Sup. Ct. 392; Inter-Ocean Cas. Co. v. Foster (Ala.) 147 So. 127.

There is also a conflict in the authorities where the policy contains no like provision.

In this case there is no such clause. The matter insured against in the policy is "the effects resulting directly and exclusively of all other causes from bodily injuries sustained * * * solely through external, violent, and accidental means."

The effect involved is the death of insured. That such effect resulted from bod-

ily injury is unquestioned. That the means effecting the result were external is unquestionable.

The only question, then, is: Were the means effecting the result accidental?

This is the decisive question in all the cases, whether the policy contains the particular clause with reference to sunstroke due to external, violent, and accidental means.

The divergence of opinion is illustrated by what is said in Caldwell v. Travelers Ins. Co., 305 Mo. 619:

"There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen.

"The other line of cases holds that, where injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event which caused such injury or death."

Among the cases holding that death from sunstroke is an unusual or unexpected result of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means, and though the result may be unusual, unexpected, or unforeseen, is not covered by the insurance, is Landress v. Phoenix Mut. Life Ins. Co. et al., 291 U. S. 491, 54 S. Ct. 461. The cases cited therein as upholding the rule are Nickman v. N. Y. Life Ins. Co. (C. C. A.) 39 F. (2d) 763; Paist v. Aetna Life Ins. Co., 54 F. (2d) 393; Harloe v. California St. Life Ins. Co., 206 Cal. 141, 273 P. 560; Continental Cas. Co. v. Pittman, 145 Ga. 641, and Semanick v. Continental Cas. Co., supra.

These cases in effect conclude that sunstroke is an accident in the general acceptance of the term, and at the same time say that death does not result from accidental means, that the result only is accidental. That accidental means only is insured against and not accidental results.

Defendant earnestly contends that the Landress Case, supra, is decisive of this case, and says "with this clear, logical, and understandable opinion to guide, the state courts will undoubtedly accept it."

Mr. Justice Cardozo, in his dissenting opinion, in the Landress Case, supra, says:

"Sunstroke, though it may be a disease according to the classification of physicians, is none the less an accident in the common speech of men. Ismay, Imrie & Co. v. Williamson (1908) A. C. 437, 439; Lane v. Horn & H. Baking Co., 261 Pa. 329, 104 A. 615, 13 A. L. R. 963. The suddenness of its approach and its catastrophic nature (Matter of Connelly v. Hunt Furniture Co., 240 N. Y. 83, 87, 147 N. E. 366, 39 A. L. R. 867) have made that quality stand out when thought is uninstructed in the mysteries of science. Lower v. Metropolitan Life Ins. Co. (1933) 111 N. J. Law, 426, 168 A. 592, 593, collating the decisions. Violent it is for the same reason, and external because the train of consequences is set in motion by the rays of the sun beating down upon the body, a cause operating from without."

And:

"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. 'Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an 'accident.' Halsbury L. C. in Brintons v. Turvey, L. R. (1905) A. C. 230, 233. C. F. Lewis v. Ocean Accident & Guar. Corp., 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129; Innes v. Kynoch (1919) A. C. 765, 775. On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. Mut. Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. Met. Life Ins. Co., 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895. The proposed distinction will not survive the application of that test."

If the question involved were a federal one, we would, of course, be bound to follow the Landress Case. But we believe that the better reasoning is with the dissenting opinion and the cases cited therein, and this court is already committed to the rule, as said therein, "if there was no accident in the means, there was none in the result."

The vast number of sunstroke cases resulting in death leads to the conclusion that such result (death) is not unusual or un-

expected. It is the sunstroke itself that is usually regarded as unusual and unexpected. While it is by no means certain that death will result from a sunstroke, it so often, does that it is not uncommon, unusual, or unexpected.

In Elsey v. Fide.ity & Cas. Co., 187 Ind. 447, 120 N. E. 42, L. R. A. 1918F, 646, it is said:

"The purpose of accident insurance is to protect the insured against accidents that occur while he is going about his business in the usual way, without any thought of being injured or killed, and when there is no probability, in the ordinary course of events, that he will suffer injury or death. The reason men secure accident insurance is to protect them from the unforeseen, unusual, and unexpected injury that might happen to them while pursuing the usual and ordinary routine of their daily vocation, or the doing of the things that men do in the common everyday affairs of life. We are of opinion that the better reasoning points out, and the weight of authority holds the true test to be, that if in the act which precedes the injury, though an intentional act, something unusual, unforeseen and unexpected occurs, which produces the injury, it is accidental; but if, in the act which precedes the injury, something usual, foreseen and expected occurs, which produces the injury, it is not accidentally effected."

In Farmer v. Railway Mail Ass'n (Mo.) 57 S. W. (2d) 744, it is said:

"Moreover, as already said, insurance policies are prepared for public consumption, and their terms must be understood according to the view of the popular mind, so that insurers may not put upon their policies one construction for the purpose of selling them, and another for the purpose of defeating liability when disaster befalls. There is no question that sunstroke, in the popular mind, is regarded as an injury resulting from accidental means, just as a lightning stroke is so regarded. The insurance companies know this when they sell their policies and collect the premiums thereon. If they desire to exclude sunstroke from the coverage of their policies, this can easily be done in express terms."

In Continental Cas. Co. v. Bruden (Ark.) 11 S. W. (2d) 493, 61 A. L. R. 1192, it is held:

"Death as a result of heat prostration or sunstroke is a risk covered by an accident policy insuring against loss of life resulting from a personal bodily injury which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event."

In Lower v. Metropolitan Life Ins. Co. (N. J.) 168 Atl. 592, many cases are cited as bearing upon the subject. Among them is Continental Cas. Co. v. Clark, 70 Okla. 187, 173 P. 453, quoted from above. The cases cited in the Lower Case show that practically all of the decisions from state courts of last resort hold that death from sunstroke is one resulting from external, violent, and accidental means.

Without any attempt to classify the cases cited, the court in the Lower Case says: "That such death (from sunstroke) was the result * * * of bodily injuries sustained through external, violent, and accidental means."

We are not inclined to depart from the holding of this court in the Clark Case, supra, but do hold sunstroke is an accident, that if death results therefrom, both the means and the result are accidental. Prudential Ins. Co. of America v. Tidwell, 163 Okla. 39, 21 P. (2d) 28.

Defendant contends that because it made demand for an autopsy and its demand was denied, the cause should be reversed. Under the facts shown we hold the contention without merit.

Insured died on July 27th. The body was sent to Mississippi for burial and buried on July 30th. Notice of the death was mailed to defendant on July 28th, but was not received by it until August 2d. Nothing was said about an autopsy until September 10th, after plaintiff had engaged an attorney, when demand was first made for an autopsy and post mortem. Coupled with this demand was a further request for permission for the representatives of the company to remove any specimen or specimens for chemical, microscopic, pathological, laboratory, or other examinations required. Grant or refusal of both requests were coupled together. The request was refused by plaintiff's attorney as not being in accord with the terms of the policy, and for the further reason that the request was not made within a reasonable time. Attention was called to the fact that the policy simply provided the right and opportunity to make an autopsy where not forbidden by law. Attention was called to a decision of the Supreme Court of the state of Mississippi wherein it was said to be held that a request for an autopsy after the body had been buried was against public policy and void.

Defendant replied in effect demanding that plaintiff sign the request as sent, either granting or refusing same; in effect, refus-

ing to modify its request so as to limit it to the terms of the policy.

Furthermore, no claim was then made nor was any showing made whatever at the trial that an autopsy would have or might have shown that insured died of or from any cause other than that claimed by plaintiff, viz., sunstroke. There was, therefore, no showing whatever that defendant was prejudiced by the refusal of the request for an autopsy. In fact, plaintiff never did refuse an autopsy within the terms of the policy, because no request limited to such terms was ever made. No explanation whatever was made or attempted to be made for the delay of some five or six weeks in requesting an autopsy.

There being no substantial error, the judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. BUSBY, J., dissents. WELCH, J., absent.