BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES
*v.* HULET, ADMINISTRATRIX

[No. 16,245.  Filed April 15, 1940.]

634

*Embree & Hall,* for appellant.

*Arthur S. Wilson,* and *Claude A. Smith,* for appellee.

DUDINE, J.—This is an action instituted by appellee, Anna Hulet, as administratrix of the estate of Arthur Hulet, deceased, her husband, against appellant to recover on an accident and illness insurance policy issued by appellant to appellee's decedent.

The original complaint consisted of three paragraphs the first of which was dismissed by the plaintiff below. Recovery was sought in each of the second and third paragraphs of complaint on the accident features of the policy for disability suffered by said decedent which allegedly resulted from a sun-stroke. It was alleged however in each of said paragraphs of complaint that the full amount due appellee's decedent under the illness features of the policy had been paid to decedent and was accepted by him for the same disability. The issues having been closed the cause was submitted to a jury for trial and the jury returned a verdict in the favor of appellee in the sum of $900.00 and judgment was rendered upon the verdict.

The errors assigned upon appeal and discussed in appellant's brief are: (1) Claimed error in overruling a demurrer of appellant to the second paragraph of complaint; (2) Claimed error in overruling a motion of appellant to require appellee to separate the third paragraph of complaint into two or more paragraphs; (3) Claimed error in overruling a motion of appellant to strike out portions of the third paragraph of complaint; (4) Claimed error in overruling a demurrer of appellant to the third paragraph of complaint; (5) Claimed error in overruling a motion of appellant for new trial.

Appellant contends, in support of the claimed error in overruling the demurrer to the second paragraph of complaint, that said paragraph of complaint "shows on its face that the sun-stroke alleged to have been suffered by appellee's decedent did not result from an unexpected and accidental exposure to the rays of the sun. It was therefore not an accident within the meaning of the policy in suit, but was a disease."

The second paragraph of complaint alleged, among other facts, that appellee's decedent had been employed as a freight brakeman and that on the "―― day of June, 1931, the exact date of which is unknown to the plaintiff . . . plaintiff's decedent received a violent personal injury by reason of a position in and about the train in the performance of his work as a brakeman on said train of cars and engine, plaintiff's decedent was subjected to the direct and indirect rays of the sun and while so performing and attempting to perform said work in the course and scope of his employment . . . said decedent suffered . . . (a) sun-stroke whereby he was disabled from performing any and every kind of work or occupation for wages or profit, . . . and became and was . . . until his death, in fact totally and permanently disabled from performing any kind of work whatever . . .".

Said paragraph of complaint alleges further that at the time when appellee's decedent received said sun-stroke he was covered by the insurance policy which had theretofore been issued by appellant to him. Said insurance policy was made part of the complaint. The policy provided an $80.00 monthly *illness* indemnity *not exceeding fourteen months* and an $80.00 monthly *accident* indemnity for the *"continuous period"* of total disability caused by accident.

The policy provided indemnity "for loss resulting directly and exclusively of all other causes from bodily injuries sustained at any time during the life of the policy solely through external, violent and *accidental* means . . .".

Appellant does not contend in its brief that the second paragraph of complaint shows on its face that that the sun-stroke allegedly suffered by decedent did not constitute "external" or "violent" means within the meaning of said terms

as used in the indemnity clause of the policy which we have just quoted, but appellant contends in effect that the alleged sun-stroke did not constitute "accidental" means within the meaning of that term as used in said clause.

We think the decision of our Supreme Court in *Elsey* v. *Fidelity and Casualty Co. of New York* (1918), 187 Ind. 447, 120 N.E. 42, followed in *American Income Insurance Co.* v. *Kindlesparker* (1936), 102 Ind. App. 445, 200 N.E. 432 is a complete answer to said contention of appellant, and said decision is adverse to such contention.

We note that the insurance policy involved in the Elsey case, supra, expressly provided that "sunstroke ... shall be deemed a bodily injury within the meaning of the policy". We note further that the policy in the instant case does not contain such provision. It does not follow from that difference in the two policies that the Elsey case, supra, is not applicable here. The Supreme Court's decision in that case is not based upon said provision in the policy before them which we have just quoted. On authority of that case we hold that the bodily injuries alleged, in the second paragraph of complaint, to have been suffered by appellee's decedent were allegedly sustained through "accidental means" within the meaning of that phrase as used in the indemnity clause of the policy involved in this case which clause we have quoted above.

Appellant contends further, in support of the claimed error in overruling the demurrer to the second paragraph of complaint, that said paragraph shows on its face that appellee's decedent *"made claim* (our italics) under the illness features of the policy for the same disability ... for which recovery is now sought under the accident features of the policy and was paid the sum of

$1120.00;'' and appellant contends further that therefore appellee is estopped from recovering on the accident features of the policy. It is sufficient to say with reference to said contentions that the second paragraph of complaint does *not* allege that appellee ''made claim'' on the illness features of the policy.

Appellant contends in effect, in support of each of the claimed errors numbered 2, 3 and 4 above, that the third paragraph of complaint purports to state two separate and distinct causes of action, based on inconsistent theories, i.e., one on the theory that plaintiff's decedent performed all of the terms and conditions of the policy to be performed by him before bringing the action, and the other being the theory that appellant waived performance, by the appellee's decedent, of certain of the terms and conditions of the policy to be performed by appellee prior to the bringing of the action. It is sufficient to say with reference to said terms and conditions and to each of said claimed errors that the third paragraph of complaint did *not* allege two inconsistent theories as to the performance of conditions and terms of the policy by appellee's decedent, but alleged performance of all of said conditions and terms, ''except that if the decedent did fail to perform any of the conditions . . . the defendant waived its right to require the same . . . .''

One of the causes for new trial which is presented upon appeal is that the verdict of the jury is not sustained by sufficient evidence. Appellant contends, in support of said cause for new trial, that the evidence fails to show that the disability of appellee's decedent resulted from bodily injuries sustained through ''accidental'' means as provided in the policy. The evidence shows that the disability of appellee's decedent followed a sun-stroke which he suffered as was alleged in the second para-

graph of complaint. What we have said, with reference to claimed error in overruling the demurrer to the second paragraph of complaint, on the question as to whether the disability of appellee's decedent, which was allegedly suffered by him as a result of the sun-stroke, was loss which resulted from bodily injuries sustained by "accidental" means, is applicable to said contention in support of said cause for new trial, and is a sufficient answer thereto.

Appellant calls our attention to the following provision in the policy:

## "MISCELLANEOUS PROVISIONS

Sec. (f) Disability due partly to accidental injury and partly to disease or bodily infirmity shall be classed as illness . . ., the original or exciting cause thereof notwithstanding"

and contends that the "undisputed evidence shows that the disability of appellee's decedent resulted partly, if not wholly, from disease or bodily infirmity, that is organic heart disease, and for that reason a recovery must be denied under the accident features of the policy in suit."

The evidence shows that appellee's decedent suffered the sun-stroke on July 17, 1931. Shortly thereafter he consulted a doctor who had been his family physician for "several years" prior thereto. The doctor testified in part as follows:

"Q. You had treated him frequently prior to the 17th of July, 1931, had you not?
A. Yes sir.
Q. You had treated him, among other things, for heart trouble, hadn't you?
A. Yes sir.
Q. And for how long prior to July 17, 1931 had you treated him for heart trouble?
A. I will have to answer that from memory but

I would say two or three years or so.

Q. And tell the jury what the particular heart trouble was that he had? What was the character, nature. of the heart trouble? I mean when you first started treating him?

A. It was organic heart lesion.

\* \* \* \* \*

Q. Is the condition that you found the heart in a condition which normally grows gradually worse unless the patient has complete rest; in other words, is it a progressive disease?

A. Well, I think it is generally considered so unless the patient takes extra good care of himself. . . .

\* \* \* \* \*

Q. His (Mr. Hulet's) ill health in the fall, say of 1931 and prior to his death, was the result of this organic heart trouble, was it not, doctor?

A. Well, as far as I know I would say it was.

\* \* \* \* \*

Q. Doctor, if when Mr. Hulet visited you shortly after July 17, 1931 you had no history at all of any sun-stroke, and if you hadn't been told that, was his condition then such as might have developed from his heart trouble of which you knew at that time?

A. Yes, I suppose it could.

\* \* \* \* \*

Q. Doctor, the things you noticed about Mr. Hulet when he saw you shortly after the 17th of July, 1931 were not necessarily indicative of sun-stroke, were they? The weakness and the exhaustion that you described?

A. No, not necessarily.

Q. Might be ascribed entirely to heart trouble?

A. Yes sir.

Q. And the prescription that you gave him, i.e., the direction to go home and get bed

rest is the ordinary treatment for that sort of heart trouble, is it not?

A. Yes.

Q. And the heart medicine that you gave him ... is the same treatment that you had prescribed and used for him prior to that time?

A. Yes.

Q. You say you saw him frequently from that time until the time of his death and you treated him frequently after July 17, 1931?

A. Yes sir.

Q. And you treated him frequently after he went back to work on July 31, 1931, didn't you, and up to the time of his death?

A. Yes sir.

Q. And your treatments during all that period were for this organic heart trouble?

A. Largely so, yes.

* * * * *

Q. No major illness besides the heart trouble?

A. No sir.

* * * * *

Q. Now if he had ... this heart trouble that you had mentioned, you wouldn't say that if he had a sun-stroke on July 17, 1931, that the sun-stroke was the cause of his disability afterward independent of all other causes, would you?

A. No, I couldn't say that.

Q. ... The heart trouble was a contributing cause to the total disability that he suffered sometime in November or December, 1931, wasn't it?

A. Yes sir.

Q. I will ask if that wasn't the efficient and dominant and proximate cause of this final disability that he suffered in December, 1931? Whether the heart trouble wasn't the efficient and dominant and proximate cause of the disability.

A. Yes, I think that was the greatest feature in the disability.''

The evidence indisputably shows that appellee's decedent was afflicted with heart trouble for two or three years before July 17, 1931, and continued to be so afflicted until his death.

The family physician was also asked a hypothetical question which embraced many facts proven, which facts purported to constitute a medical history of appellee's decedent, in which question the physician was asked to give his opinion, based on such facts, as to whether or not the sun-stroke was the "efficient, dominant and proximate cause" of decedent's disability, and the physician answered such question in the affirmative. Another doctor was asked a similar hypothetical question and he too answered the question in the affirmative. Neither of said hypothetical questions embraced the fact that appellee's decedent was at any time afflicted with heart trouble. It is our opinion that—since said hypothetical questions did not embrace the facts that appellee's decedent suffered heart trouble for two or three years before he received the sun-stroke on July 17, 1931 and continued to be so afflicted until his death —said opinion evidence of the two doctors is without probative value to prove that decedent's disability was *not* partly due to disease or bodily infirmity. See 3 Jones Commentaries on Evidence (2d Ed.) § 1321 and § 1338.

There is no other evidence in the record except the testimony of said two doctors on the subject of whether or not the disability of appellee's decedent was caused "partly to accidental injury and partly to disease or bodily infirmity" (Sec. f of the insurance policy supra).

We hold that appellant's said contention that the *undisputed* evidence shows that the disability of appellee's decedent resulted partly, if not wholly,

from disease or bodily infirmity . . . is fully sustained by the record and, in view of section (f) supra of the "miscellaneous provisions" of the policy, we hold that the evidence in the record before us is not sufficient to sustain a verdict under the accident features of the policy.

There are other questions presented in support of the claimed error in overruling appellant's motion for new trial but they are not such questions as are likely to recur in a retrial of this cause. In view of that fact and in view of the conclusion we have reached in this opinion we have refrained from discussing said other questions.

Judgment reversed with instructions that appellant's motion for new trial be sustained.