## WIECKING v. PHŒNIX MUT. LIFE INS. CO. OF HARTFORD, CONN.

No. 7343.

Circuit Court of Appeals, Seventh Circuit.

Nov. 30, 1940.

Robt. A. Adams, of Indianapolis, Ind., for appellant.

Winfield K. Denton, of Evansville, Ind., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

This action was brought to recover double indemnity benefits under two policies of insurance issued to Frederick A. Wiecking, now deceased. Appellee is the widow and beneficiary under those policies, and she claims that her husband's death was caused solely by external, violent and accidental means.

The cause was tried to a jury upon a stipulation of facts, and oral testimony. Appellant moved for a directed verdict at the conclusion of appellee's evidence, and also at the conclusion of all the evidence. These motions were overruled and a verdict was rendered for appellee. A motion for a new trial was overruled; judgment followed the verdict; and from that judgment this appeal is prosecuted.

Appellant had issued two policies of insurance to the decedent, one in 1933 and the other in 1935. Each was in the amount of $5,000, and each contained provisions calling for double the face amount upon satisfactory proof that the death of the insured resulted, directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means; and provided further that such injury was evidenced by a visible contusion or wound on the exterior of the body, except in case of drowning or of internal injury revealed by an autopsy. The double indemnity clause further provided that the company should have the right and opportunity to make an autopsy where it was not forbidden by law, and that the double indemnity benefit should not be payable if the death of the insured resulted directly or indirectly from, or was contributed to by, physical or mental infirmity or disease. Both policies were in force when the insured died.

The death occurred on a hot, sultry afternoon in July, 1936, when the temperature was 93°, the humidity 42, and the wind velocity averaged six to seven miles an hour. The insured, after playing nine holes of golf in company with three other gentlemen, collapsed on the golf course and died there within a short time. The body was taken to the clubhouse and was there examined by a physician who merely determined that he was dead. He took no history of the case, and stated that he could not have determined the cause of his death. Later he stated to the undertaker that he did not know the cause of the death, but it must have been a heart attack. Later the defendant procured a statement from this doctor that the cause of the death was coronary occlusion. This was the cause of death inserted in the proof of death which plaintiff signed. She had no direct knowledge of the cause of her husband's death, and signed the proofs

on the assurance of the defendant that in so doing she would not jeopardize her claim for double indemnity benefits for death by sunstroke. No doctor saw the deceased on the day of his death until after his death, no autopsy was performed, and his body was embalmed under a pressure system.

The proof of death was dated August 2, 1936, and demand was made only for the principal liability of $5,000 under each policy. Settlement was therefore made on August 6, 1936, of the single liability under both policies. At that time the defendant would not have paid double indemnity benefits if the proofs had shown death by sunstroke, because of the ruling in. Landress v. Phoenix Insurance Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, which held that death by sunstroke while playing golf was not caused by accidental means. Nor, under such circumstances, would it have asked for an autopsy. Plaintiff was advised of that ruling and did not institute her claim for double indemnity until after the decision of the United States Supreme Court in Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, on April 25, 1938. Subsequently she demanded double indemnity of the company, and at its request furnished further proofs. showing death by sunstroke. The payment of double indemnity was refused, and this suit followed.

Up until the time of his fatal attack the insured had been in excellent health. There was substantial evidence to support the conclusion that the deceased died from sunstroke, and that his symptoms were not typical of either a heart attack or apoplexy. The principal question before us is whether, under the Indiana law, decedent's death, under the circumstances set forth, can be said to have resulted, directly or independently of all other causes, from bodily injury effected solely through external, violent and accidental means; and that such injury was evidenced by a visible contusion or wound on the exterior of the body.

■ The courts of the United States differ in the decision of this question. See Annotations in 17 A.L.R. 1197; 61 A.L.R. 1197; and 90 A.L.R. 1387. However, under the ruling in Erie Ry. Co. v. Tompkins, supra, we are only concerned with the decision of the question by the courts of Indiana. The Indiana case having the most direct bearing on the question is that of Elsey v. Fidelity & Casualty Co., 187 Ind. 447, 120 N.E. 42, L.R.A.1918F, 646, which involved a claim arising out of a sunstroke. Claimant was insured under a policy which provided that a "sunstroke * *: * suffered through accidental means * * * shall be deemed a bodily injury within the meaning of the policy." It contained no provision requiring that the injury be sustained through external and violent means, and it limited its liability for sunstroke to one suffered through accidental means. The court in passing on the question of liability recognized these limitations. The facts there presented were that the insured, while going from the postoffice in Indianapolis to his place of employment, was riding in an open streetcar which left the shady portion of the street, subjecting the insured, by reason of his position in the car, to the direct and indirect rays of the sun. It appeared that as he was about to alight from the car at a place where there was no shade, he suffered a sunstroke. The court held that this particular sunstroke was caused by accidental means, but did not hold that all sunstrokes were accidents.

■ A few years later, the same court elaborately analyzed and discussed the question of accidental death in a case presenting somewhat different facts, death resulting from rupture of a blood vessel caused by over violent exertion in shaking down a furnace. Husbands v. Indiana Ass'n, 194 Ind. 586, 133 N.E. 130, 132, 35 A.L.R. 1184. In holding that accidental means and accidental result must concur in producing injury such as to bring it within the scope of a policy providing for liability for accidental injury, the court held that "death resulting from voluntary physical exertion or from intentional acts on the part of the insured is not accidental and not within the meaning of a contract like the one under consideration. * * * If the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means. * * * But the courts of Indiana are committed, we think, to the doctrine that, so far as death is concerned, such a policy covers only cases where death resulted from bodily injury caused by the 'accidental' application of external violence, and not cases where an accustomed and habitual act, intentionally done in the

usual way, produced a rupture of the tissues of vital organs of the body that had become weakened by disease, and thereby caused death." The court then referred to the Elsey case, supra, distinguishing without criticism its facts from those then under consideration, and quoting from it as follows: "'We are of the opinion that the better reasoning points out, and the weight of authority holds, the true test to be that, if in the act which precedes the injury, though an intentional act, something unusual, unforeseen, and unexpected occurs which produces the injury, it is accidental; but, if in the act which precedes the injury something usual, foreseen, and expected occurs which produces the injury, it is not accidentally effected.'" The same general principles have been laid down in many other Indiana cases, citation of which seems unnecessary.

Appellee also calls attention to another sunstroke case, decided by the Appellate Court of Indiana, Benefit Ass'n v. Hulet, 26 N.E.2d 548, 550. The policy involved in that case was similar to that of the policy of the case at bar, in that it provided for indemnity "for loss resulting directly and exclusively of all other causes from bodily injuries sustained at any time during the life of the policy solely through external, violent and accidental means * * *." The allegations of the complaint followed the findings of the Elsey case, and the court, in overruling a demurrer to the complaint, held that, under the ruling of the Elsey case, the sunstroke constituted accidental means within the meaning of the terms of the policy. However, under the facts presented it appeared that the death of the insured, which occurred five months after the alleged sunstroke, had been caused, partially at least, by a serious heart ailment which he had suffered for several years before the occurrence of the alleged sunstroke.

■ In determining whether the facts in the instant case constitute an accidental sunstroke, we are of necessity controlled by the Elsey case. We are unable to distinguish the material facts of one from the other, except that in one case decedent was rightfully performing the duties of his business, and in the other he was rightfully engaged in recreation and in what he obviously and not unreasonably thought was for the benefit of his physical condition. We are not convinced that the difference is sufficient to alter the character of the sunstroke. This at once suggests the question—what is an unaccidental sunstroke? However, we are not called upon to answer that question. It is sufficient to say that the facts here presented constitute an accidental sunstroke under the Elsey case, and that seems to be the last expression of Indiana's highest court. The fact that the Elsey policy specifically included accidental sunstroke as a basis of liability is of no importance here. The instant policies cover all accidental means of death under the conditions named, and the evidence is sufficient to support the judgment under the Indiana law.

■ It is further urged by appellant that the District Court erred in its definition of "a visible contusion or wound on the exterior of the body" as required by the policies. We approve of the court's definition as set forth in its instructions, and we think there was no error in this respect.

■ Appellant further contends that the court erred in ruling that appellee's conduct in filing with appellant proofs of death containing her sworn statement and that of the attending physician that the death was caused by coronary occlusion, without indicating that such death was caused by external, violent and accidental means, and in delaying for a period of two years before making such claims, thus in effect depriving appellant of its right to make an autopsy, did not estop her from denying the sworn statements. Under the circumstances hereinbefore related, there is no merit in this contention.

■ It is further urged by appellant that the court erred in refusing one of its requested instructions. We think the court's instructions substantially covered everything requested in the rejected instruction, and there was no error in this respect. The court properly ruled that there was sufficient evidence to go to the jury upon the question whether the death was caused by sunstroke.

Judgment affirmed.