## PAUL REVERE LIFE INS. CO., WORCESTER, MASS., v. STANFIELD.

### No. 3171.

Circuit Court of Appeals, Tenth Circuit.
Oct. 30, 1945.

Rehearing Denied Nov. 28, 1945.

MURRAH, Circuit Judge, dissenting.

———◆———

Roy C. Lytle, of Oklahoma City, Okl. (D. I. Johnston and Keaton, Wells & Johnston, all of Oklahoma City, Okl., on the brief), for appellant.

Louis A. Fischl, of Ardmore, Okl. (Thos. W Champion, of Ardmore, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action in the United States District Court for the Eastern District of Oklahoma to recover under the double indemnity provision of a life insurance policy. Judgment was entered for the plaintiff, and the defendant company has appealed.

There is no dispute in the evidence, and the only question is whether the accident which caused death was within the coverage of the policy. The insured, a resident of Oklahoma, died as the result of sunstroke. Under the settled law of Oklahoma, sunstroke is an accident effected solely through external, violent and accidental means.[1] Under the decision of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this decision by the Oklahoma Supreme Court is binding upon us.

Whether the accident which caused the death of the insured was within the coverage of the policy must be determined from a rider attached to the policy, the material portion of which reads as follows:

"If the death of the insured occurs while the attached policy is outstanding and in force under its original conditions and prior to the insured's sixty-fifth birthday, and results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, within ninety days of the occurrence of the accident, and if such accident (except in the case of accidental drowning or of internal injuries revealed by an autopsy) is evidenced by a visible contusion or wound on the exterior of the

---

[1] Provident Life & Acc. Ins. Co. v. Green, 172 Okl. 591, 46 P.2d 372; Maryland Cas. Co. v. Hazen, 182 Okl. 623, 79 P.2d 577; Woodmen of the World Life Ins. Soc. v. Chapman, 189 Okl. 69, 113 P.2d 600.

body, the sum insured provided on the first page of the attached policy will be doubled."

This rider, as far as material to the issues presented herein, limits the coverage to death resulting from such accidents as are evidenced by a visible wound or contusion on the exterior of the body. Whether there was such a wound or contusion in this case must be determined from the following agreed facts:

The deceased became pale and remarked that he felt a "hot spell or something" coming over him; he immediately went to bed; his clothes were wet with perspiration; he complained of smothering to death and of pains in his arms; his face was a pale yellow color and his lips were blue and swollen; the pupils of his eyes were dilated, and his eyes were glassy; he vomited blood practically the entire time, and hot fluid flowed from his nose; and just before death occurred his "skin had turned blue practically all over his body."

Do any of these symptoms constitute a visible wound or contusion upon the exterior of the body? We think they do not. Many of the cases upon which appellee relies to sustain the judgment are not helpful because the proviso considered therein was quite different from the one in question here. They arose under provisions which required a visible mark or evidence of injury, or language meaning substantially that. Under such a proviso we would have no difficulty in concluding that there were visible marks and evidence of an injury. But this proviso requires a wound or contusion on the exterior of the body.

A number of courts have considered similar provisos where the facts were substantially the same, and as in many such cases, have reached different conclusions. In Wiecking v. Phoenix Mutual Life Ins. Co., 7 Cir., 116 F.2d 90; Huss v. Prudential Ins. Co. of America, D.C., 37 F.Supp. 364; American Nat. Ins. Co. v. Fox, Tex.Civ. App., 184 S.W.2d 937, and Warbende v. Prudential Ins. Co. of America, 7 Cir., 97 F.2d 749, 117 A.L.R. 760, the courts held that substantially the same facts met the requirements of similar provisos in the policies, while in Paist v. Aetna Life Ins. Co., D.C., 54 F.2d 393, affirmed 3 Cir., 60 F.2d 476; Pope v. Lincoln Nat. Life Ins. Co., 8 Cir., 103 F.2d 265; Dupee v. Travelers Ins. Co. 278 N.Y. 659, 16 N.E.2d 391, and Travelers Ins. Co. v. Ansley 22 Tenn. App. 456, 124 S.W.2d 37, the courts held similar facts insufficient to meet the requirements in similar provisos.

The parties were free to make their own contract, and it is our duty to give effect thereto. Where language is clear and unambiguous and has a well defined meaning, the presumption must be that the parties used such words in their ordinary and well understood meaning. Courts are not justified in adopting strained or technical or unnatural definitions of words in order to swing the pendulum one way or the other.

The words "wounds" and "contusions" have well defined, generally accepted and understood meanings. The commonly understood and accepted meaning of the word "wound" is an injury to a person in which the skin or other membrane is broken, as by violence or surgery. See Travelers Ins. Co. v. Ansley, supra; Webster's New International Dictionary, Second Edition. These authorities, as well as others, likewise define "contusion" as a bruise affecting subcutaneous tissue, without breaking the skin. "Contusion," in its ordinarily accepted meaning, is synonymous with "bruise." It is difficult to think of pallor, perspiration, dilated pupils, or a bluish tint to the skin immediately preceding death as either wounds or contusions. To so hold would, in our opinion, do violence to the ordinarily accepted meaning of these terms as they are understood by intelligent persons.

We think it must be presumed that when the parties used these terms in their contract, they used them as they are commonly and ordinarily understood. In the absence of any guidance from the Supreme Court of Oklahoma we choose to follow those decisions which hold manifestations such as outlined above insufficient to constitute a wound or contusion upon the exterior of the body.

The judgment of the trial court is reversed and the cause is remanded, with directions to enter judgment for the defendant.

MURRAH, Circuit Judge (dissenting).

Admittedly, the only question presented is one of state law, on which the Supreme Court of Oklahoma has not spoken beyond the holding that sunstroke is an accident effected solely through external and violent means. It is also agreed that the adjudicated cases are in sharp conflict on the

question whether death from sunstroke, evidenced by the outward symptoms shown here to exist, is within the coverage of a policy providing that the accident must be evidenced by a visible contusion or wound on the exterior of the body.

It is, of course, manifest that our choice of the authorities is but a forecast of what the Oklahoma Supreme Court would say under the same facts. The trial court chose to follow those authorities which under the same facts and contractual provisions held that death from sunstroke resulting in discoloration shown here to exist, was evidence of contusions on the exterior of the body. The trial court's prophecy of what course the Supreme Court of Oklahoma would follow is as good as mine, and I cannot agree to a reversal of its judgment simply because the authorities on the other side of the question appeal to me as most logical and just. This is especially true when to adopt the opposite view is to read out of the coverage of the policy a cause of death which the Oklahoma courts have said was an accident effected solely through external and violent means.

I would affirm the judgment.