## MASSACHUSETTS MUT. LIFE INS. CO. v. PISTOLESI.

### No. 11349.

Circuit Court of Appeals, Ninth Circuit.

March 7, 1947.

As Modified on Denial of Rehearing May 2, 1947.

David Livingston and Louis F. DiResta, both of San Francisco, Cal., for appellant.

M. Mitchell Bourquin, John J. Healy, and S. H. Allen, all of San Francisco, Cal., for appellee.

Before DENMAN, HEALY, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

The Massachusetts Mutual Life Insurance Company appeals from a judgment on

---

a jury's verdict holding it liable under a double indemnity clause of the insurer's policy, payable to the appellee.

On November 2, 1938, the insurer issued to Norbert H. Pistolesi two life insurance policies—one for $5,000 and the other for $2,000. Mr. Pistolesi died on October 5, 1941, and the ordinary benefits payable under each policy have been satisfied. The claim in suit is based on the double-indemnity feature of the policies.

The question here is whether the appellee, the plaintiff below, has maintained her burden of proof that the accident, which we assume caused the death, produced "a visible contusion or wound on the exterior of the body" of the deceased within the policies' provisions that

"Upon receipt of due proof that the death of the insured occurred * * * as the result of bodily injury effected solely through external, violent, and accidental means, as evidence of which injury (except in case of drowning or of internal injuries revealed by an autopsy) there is a visible contusion or wound on the exterior of the body, and that such death occurred * * * as a direct result thereof, independently and exclusively of all other causes * * *."

On September 14, 1941, three weeks prior to his death, Mr. Pistolesi, aged 39 years, was on board a pleasure yacht, the Eloise. He was traveling hand-over-hand suspended from a wire which was strung between two masts of the boat. He reached for the wire with one hand, missed the wire, so that his body swung around, and he held on to the wire with the other hand. Then he went back to the mast and remained there for a few minutes while his photograph was taken by another guest on the boat. Pistolesi then climbed down the mast to the deck.

From that occasion until his death, Pistolesi intermittently complained of pain in his chest, and on physical effort he perspired freely, his face became pale, and his lips were sometimes blue. He lost his customary vigor, he walked in a shuffling manner, at times his breathing was labored, and his countenance was drawn.

Early in the morning of October 5, 1941, he awakened and complained of severe pain. A Dr. Wagner was called, but before Pistolesi could be removed to a hospital he died.

There was no autopsy. The coroner was not notified. The body was cremated on October 7, 1941. The official death certificate signed by Dr. Wagner stated that the immediate cause of death was "acute myocardial failure due to coronary thrombosis—duration one week."

We assume as correct the appellee's contention that the happenings to Pistolesi on the yacht's rigging accidentally caused coronary thrombosis and, as a result, his death. We do not agree with appellee's contention that either mere sweating or paleness of skin or recurring blueing of the lips of Pistolesi after such exertion constitutes a "visible contusion or wound on the exterior of the body." Appellee gave no evidence of any wound and we think none of a "contusion."

The California Civil Code, Section 1644, provides that "The words of a contract are to be understood in their ordinary and popular sense." In California, insurance policies are so construed. Cf. Greenberg v. Continental Casualty Co., 24 Cal. App.2d 506, 75 P.2d 644, relying on the dictionary definition of the policy's words. The Supreme Court states of dictionary definitions of the word "passenger" that "While for the purposes of judicial decision dictionary definitions often are not controlling, they are at least persuasive that meanings which they do not embrace are not common." Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 85, 54 S.Ct. 590, 593, 78 L.Ed. 1137.

Webster's New International Dictionary, 2d Ed., defines a "contusion" as "a bruise; and injury attended with more or less disorganization of the subcutaneous tissue and effusion of blood beneath the skin but without breaking the skin." Funk & Wagnall's New Standard Dictionary as

"1. The act of bruising by striking or pounding, or the state of being so bruised; also a pulverizing by beating or pounding.

"2. Surg. A bruise; an injury, as from a blow with a blunt instrument, that does not make an open wound." .

The court recognizes that an injured heart may drive less blood to the lips and

that they will appear blue, as they did with the deceased just after his strain on the yacht's rigging. This, however, is no evidence that the lips were contused any more than if they turned blue from a sudden gust of fog laden air.

It is possible that such a heart affliction as here claimed may gradually deposit in the veins and arteries material which will slow the circulation and in time cause a permanent blueing of the lips by such deposit therein. It is not necessary to decide whether this would be a contusion. Here the testimony is that the blue lips appeared only when the deceased physically exerted himself. It is not claimed that he sustained a blow on the lips or that they were swollen.

The uncontradicted medical testimony corresponds with the dictionary definitions. It is

"Q. State whether blue lips are wounds or contusions? A. Blue lips are not a wound or contusion, not a bruise.

"Mr. Healy: I move to strike the answer as not responsive, it can be answered yes or no. A. The answer is no.

"A. Blueness of the skin is a result of the oxygen content of the blood,—veinous blood is blue and the oxygenized blood is red. When the heart action is insufficient and the blood is not pumped properly and sufficient oxygen does not enter the blood, that imparts a blue color or character to the skin, the blood becomes blue, and that imparts the color to the skin. There is no damage and there is no wound or contusion.

"Q. Is there any damage to the subcutaneous tissue? A. There is not.

"Q. In the case of pallor is there any damage to the subcutaneous tissue? A. There is not.

"Q. In case of pallor is there any effusion of blood beneath the skin? A. No.

"Q. In case of blue lips is there any effusion of blood beneath the skin? A. No."

■ Our conclusion that appellee's burden of proof of contusion has not been sustained by the evidence of pallor and blue lips is in accord with the decision on the identical facts in the case of Paul Revere Life v. Stanfield, 10 Cir., 151 F.2d 776, 777, where the court construed the same policy provision.

■ It appears that appellant was entitled to have given to the jury its requested instruction for a verdict in its favor and to have granted its motion for a judgment notwithstanding the verdict. It is now entitled to have vacated the judgment appealed from and to have one entered that plaintiff take nothing by her complaint and for its costs. Central Vermont Railway v. Sullivan, 1 Cir., 86 F.2d 171, 174; Brennan v. Baltimore & Ohio Railroad Co., 2 Cir., 115 F.2d 555; Leader v. Apex Hosiery Co., 3 Cir., 108 F.2d 71, 81; Southern Railway Co. v. Bell, 4 Cir., 114 F.2d 341, 343; Connecticut Mutual Life Insurance Co. v. Lanahan, 6 Cir., 113 F.2d 935; Brunet v. Kresge Co., 7 Cir., 115 F.2d 713, 716; Paul Revere Life Ins. Co., Worcester, Mass., v. Stanfield, 10 Cir., 151 F.2d 776; Baltimore & Carolina Line v. Redman, 295 U.S. 654, 661, 55 S.Ct. 890, 79 L.Ed. 1636; National City Bank of New York v. Oelbermann, 298 U.S. 638, 56 S.Ct. 676, 80 L.Ed. 1372.

The judgment appealed from is reversed and the cause remanded to the district court for the action above indicated.