MASSACHUSETTS MUT. LIFE INS. CO.
v. SMITH.

No. 13685.

United States Court of Appeals
Fifth Circuit.

Nov. 23, 1951.

On Rehearing Jan. 11, 1952.

Further Rehearing Denied March 18, 1952.

See 194 F.2d 1006.

H. H. Grooms, Birmingham, Ala., for appellant.

Reid B. Barnes, James A. Simpson, Birmingham, Ala., for appellee.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

Federal jurisdiction in this consolidated action depends solely upon diversity of citizenship. The appellant asks a declaratory judgment against the appellee with reference to two life-insurance policies issued by it on the life of Sumpter Smith. Each policy is in the sum of $5,000, and each contains a provision limiting the liability of the insurer in respect to death resulting directly or indirectly from operating or being in or on, or riding in, any kind of aircraft, whether as a passenger or otherwise, the provisions being as follows: "If any claim shall arise under this policy, or any policy issued in exchange therefor, by reason of the death of the insured and if such death shall have resulted directly or indirectly from operating or being in or on, or riding in, any kind of aircraft, whether as a passenger or otherwise, the liability of the company under such policy shall be limited to the reserve less any indebtedness thereunder at the date of death of the insured, any other provision of such policy to the contrary notwithstanding. This limitation of liability shall also apply if this policy or any policy issued in exchange therefor becomes paid-up by its terms or is continued in force in accordance with its non-forfeiture provisions."

The proceeds of said policies, in the event of the death of the insured, and subject to the terms and conditions of the policies, are payable to the appellee. The appellant tendered into court the calculated amount of its alleged limited liability, which is not here in dispute. The burden of proof was on the appellant to establish the fact, by a preponderance of the evidence, that the insured's death resulted, directly or indirectly, from a cause within the exclusionary clause of the policy (above quoted), which provides for a limitation of the insurer's liability if death results from an aviation hazard.

The fact that the insured is dead is not in dispute; but the issue here, and before the jury in the trial court, is and was as to the time and manner of his death, there being no living witness who saw him die. When last seen, about 6:30 A. M. on January 24, 1943, he was starting in a plane on a trip from Puerto Rico to Trinidad. When the plane in which he was riding was last seen, it was entering a storm front in the open sea, flying at an elevation of 1100 feet when it had been directed to fly at 9000 feet.

It was a land-based plane, not equipped with life preservers; if it went down, it could not possibly have remained afloat but a few minutes; and its occupants could not have survived the perils of the sea but a short time. There is no evidence that any of them has ever been seen since that time. This was about 11:30 A. M. on January 24, 1943, and the circumstances exclude every other reasonable hypothesis except that the insured died on that date while riding in that aircraft.

The jury's finding that the insured met his death on January 24, 1944, is wholly unsupported by any substantial evidence or any reasonable inference therefrom. It is not necessary that the proof exclude every possible hypothesis except that of death from operating or riding in an aircraft. The jury is not permitted to enter the field of conjecture in order to determine the cause of death. This same aviation hazard was involved in Barringer v. Prudential Ins. Co., D.C., 62 F.Supp. 286. There the case was submitted to the court without a jury; there the evidence was held sufficient to support a finding that the insured's death resulted from riding in an airplane, and the court so found. The same issue was submitted to a jury in this case, but the jury made a contrary finding. The question here is not whether the evidence would have supported a finding that death resulted from riding in an airplane, but whether it will support a finding that death resulted from any other cause. Consequently, there is no conflict between our decision in the case at bar and the court's decision in Barringer v. Prudential Ins. Co., supra. In the latter case, the court said, 62 F.Supp. at page 288: "If the evidence would support the finding that the insured's death was accidental, and I think there is no doubt that under the rule laid down by the decisions referred to it would, then it must also support the finding that the accident consisted in the plane's falling into the ocean. That, it seems to me is not only a reasonable inference, but the only reasonable one. * * * Various more or less fantastic explanations of disappearance of plane and passengers might be suggested but, with practically no land on the direct route to Trinidad, I do not see how there could be much doubt in the mind of any reasonable person that it came down in the sea. At any rate it is not necessary to preclude all other possibilities."

The judgment appealed from is reversed; and, since the appellant made a motion in the court below for a directed verdict, and also a motion for judgment notwithstanding the verdict, both of which were taken under advisement by the court and subsequently overruled, judgment will be granted here for the appellant on the motion notwithstanding the verdict. 28 U.S. C.A. § 2106 of the New Judicial Code; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Massachusetts Mutual Life Ins. Co. v. Pistolesi, 9 Cir., 160 F.2d 668.

Reversed and rendered.

On Petition for a Rehearing.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

The following statement in our former opinion in this case is withdrawn, because contrary to a finding implicit in the jury's verdict: "When the plane in which he was riding was last seen, it was entering a storm front in the open sea, flying at an elevation of 1100 feet when it had been directed to fly at 9000 feet." The statement in the file that someone had seen this plane after it left Puerto Rico is a highly controversial one; and, the jury having returned its verdict for the appellee, we are bound by all of the facts and inferences favorable to the appellee that are warranted by the evidence in the record. The case of Barringer v. Prudential Insurance Company, D.C., 62 F.Supp. 286, was not decided on full evidence, but on a presumption arising from pleadings and statements of counsel.

Our original view of this case was decisively influenced by the belief that, when the plane was last seen, it was flying at an elevation of 1100 feet when directed to fly at 9000 feet, and was entering a storm front. We now think that it was within the province of the jury to disbelieve the report to this effect, in the light of contrary statements in the file and the uncertainty as to the description of the plane. Also the

weather condition, apparently, did not indicate much of a storm.

■■ The burden of proof was on the insurer to prove that death resulted from an aviation hazard. If the plane was shot down by enemy submarines, the appellee is entitled to recover; the same is true if the plane fell, sank, was never heard of, and Colonel Smith made his way to one of the near-by uninhabited islands, where he died of disease or starvation, as Jennings came very near doing.

■ On reconsideration, we cannot say as a matter of law that the insurer has met its burden in this case. The petition for rehearing is granted, our former opinion is set aside, the judgment of reversal set aside, and the judgment appealed from affirmed.

Affirmed.

RIVES, Circuit Judge, concurring:

There was testimony of considerable enemy submarine activity in the area over which the plane flew and that the submarines had turned the tables on the planes and were firing on the planes. The jury could have found from the testimony that a particular B-24 plane in this area got a shell from a submarine fired into its nose between Christmas of 1942 and New Year's of 1943, less than a month before the plane bearing Colonel Sumpter Smith disappeared. I think that we should take judicial knowledge that at about this time the German submarines were venturing very close to our shores, coming into the Gulf of Mexico and considerably nearer than the waters between Puerto Rico and Trinidad. If this plane had been lost over Germany I take it that no one would argue that the insurer had met its burden. I think that the evidence established enough enemy activity in the area traversed by this plane to make a jury question and I concur in the affirmance.

STRUM, Circuit Judge, dissenting on rehearing:

With deference to the views of my colleagues, I adhere to the original opinion and judgment of reversal, which I think are correct and should stand.

That the plane was shot down by a hostile submarine is both fanciful and spec-ulative. The possibility of hitting an airplane flying at a high altitude, at 200 miles per hour, with a fixed projectile fired from the deck of a submarine rolling in the sea, is too remote to be accepted as the basis of a verdict, in the absence of positive and credible testimony to that effect, even though there is evidence that submarines were taking "pot shots" at airplanes, and though there is inconclusive and unpersuasive testimony that another plane *may* have been struck by a projectile so fired at some other time and place. What the circumstances of that incident were, is not disclosed. That it happened here rests on nothing more substantial than conjecture.

That the occupants of the plane, including the insured, survived the crash only to die of starvation or disease on some remote and uninhabited island, is also more fanciful than real. The existence of no such island is pointed out along the route to be followed by the plane, nor is there anything more than mere conjecture to support an inference that insured died in this manner.

That the plane when last seen was entering a tropical storm area flying at an altitude of 1100 feet when its flight plan called for an altitude of 9000 feet, is certain. In the circumstances shown by the evidence, the only reasonable and rational conclusion is that the plane fell into the ocean and its occupants, including the insured, lost their lives either from the force of the crash, or by drowning.

As stated in the original opinion, "The jury is not permitted to enter the field of conjecture in order to determine the cause of death." The submarine theory, and the starving survivor theory, are more fanciful than real. The bad weather and low altitude of the plane when last seen, are facts. Conclusions drawn from the evidence, even by juries, must rest upon probability, not mere possibility.

In my opinion, the defendant insurance company has successfully borne the burden of establishing that insured's death was within the aviation exception clause.

For these reasons I respectfully dissent from the judgment of affirmance on rehearing.