EDMONDS v. SKELLY OIL CO. et al.

No. 34914.   May 8, 1951.

*231 P. 2d 360.*

A. H. Huggins, Norman, and Leonard G. Geb, Ponca City, for petitioner.

Gayle M. Pickens and James H. McGowan, Tulsa, and Mac Q. Williamson, Atty. Gen., for respondents.

LUTTRELL, V.C.J.   Emery J. Edmonds, claimant, filed his first notice of injury and claim for compensation stating that while employed as a yard man for the respondent, Skelly Oil Company, he sustained an accidental injury arising out of and in the course of his employment on May 3, 1949, when he suffered heat exhaustion. After three hearings the trial commissioner entered an award finding that claimant sustained an accidental injury resulting in total permanent disability due to heat exhaustion. On appeal to the commission en banc the award was vacated and an order entered denying an award. This proceeding is brought to review the final order of the State Industrial Commission.

Claimant testified that at approximately 2:30 in the afternoon on May 3, 1949, he was leveling chat and rock and for this purpose was digging with a pick and shoveling the chat and rock into a wheelbarrow. His nose started to bleed and he felt sick and dizzy. He went to a hydrant and washed his head. His nose did not stop bleeding but he got it checked. He reported to his foreman. He remained on the job but did no more work of this nature that day and drove his car home about 4:30 in the afternoon. He had supper and went to bed and his nose started bleeding again. He called Dr. Gaddy, who came by and packed his nose. At 3 o'clock a.m. it started bleeding again and Dr. Gaddy packed it again; that evening Dr. Gaddy sent him to the hospital at Ponca City where he remained two or three days. Thereafter he was returned to the hospital where he was treated by Dr. Streitenberger who finally performed an operation which consisted, among other things, of tying an artery. This operation completely stopped the nosebleed. It was performed on the 29th day of May, and claimant was released on June 20, 1949, as able to do light work. Claimant further testified that he was 65 years old in November of 1949.

Dr. Gallagher, testifying for respondent, stated that he examined claimant on December 19, 1949, and was advised by claimant that he was digging on May 3, 1949, when he developed nosebleed. The doctor detailed the subsequent operation and history of the case as outlined above in claimant's testimony, and in his report stated:

"This old man has high blood pressure and a very weak heart. It cannot expect to sustain him very long. He has recovered completely from the nosebleed. I believe this disorder was the result of hypertension and not the result of an accidental injury. He suffered no permanent partial disability from the nosebleed disorder."

He testified that in addition to high blood pressure and a weak heart, claimant has hardening of the arteries.

Dr. D. W. Streitenberger testified he first saw claimant on May 8, 1949; that he was suffering from severe epistaxis, the technical name for nosebleed. He gave treatments and operation to correct the nosebleed and on May 29th made an incision below the right ear and tied an artery. This operation was successful and there has been no nosebleed since then. He stated claimant had a fracture of the nose five years previous to the date he first saw him and that two years later his nose began bleeding without any reason. After that there was no further bleeding until the accident of May 3, 1949. Dr. Streitenberger identified a signed statement dated June 17, 1949, stating that claimant could be released as of June 20, 1949, to do only light work for a period of 30 days. The date of this statement was the last time the doctor saw claimant. Dr. Streitenberger further testified that when claimant came to him on May 8, 1949, his blood pressure was 200/110 and when he released him it was 158/90. Although several questions were propounded to the doctor concerning the effect of high blood pressure and heat exhaustion, Dr. Streitenberger was not asked by either the claimant or the respondent whether in his opinion the nosebleed or his physical condition was due to heat exhaustion.

Dr. P. T. Powell, testifying for claimant, stated that he examined claimant first on September 12, 1949. He recited claimant's history substantially as detailed above. He stated he found claimant had high blood pressure and a weak heart; that the nosebleed was the result of high blood pressure caused by physical strain or heat exhaustion; that the heat exhaustion was caused by his work on May 3, 1949, and that as a result of this claimant is totally and permanently disabled.

Dr. Frank Gaddy, referred to above as the doctor who first treated claimant, stated he first saw claimant on March 20, 1949, when he came to him for a check-up; that when he saw him on May 3rd his blood pressure had gone from 160 to 220. He stated claimant gave him a history of digging a ditch and getting dizzy and too hot. He sent him to Dr. Streitenberger where the treatment and operation as above described was obtained. The doctor stated claimant's condition is due to heat exhaustion and that claimant is totally and permanently disabled.

There is a discrepancy in the testimony of claimant as to how the nosebleed started. In the first proceeding he stated:

"Q. Did you get hot when this accident happened? A. Well, I wouldn't say so awful hot. I don't know just what happened."

At the second hearing he stated that it was pretty warm and that he was weak, nervous, "fainty", and just about knocked out.

The undisputed testimony is that the day was partly cloudy with the temperature ranging from 80 to 85 degrees Fahrenheit between the hours of 12 noon and 4 p.m. The space where claimant was working was open with the wind blowing from the south and the closest building to him was the engine house approximately 25 feet away. There were no obstructions to the east or south. He moved about the open yard in his work.

The order denying the award states:

"That the Order made and entered herein on July 21, 1950, by Commissioner Grady H. Holloway, is vacated, set aside and held for naught, in that the claimant did not have an accidental personal injury within the meaning and purview of the Workmen's Compensation Law."

In the first proposition claimant states:

"We have underlined a portion of this order for emphasis to call the court's attention to the fact that only the conclusion of law in the original order was set aside by the Commission en banc and that the findings of fact by the Commission are full and complete and were not set aside."

The portion underlined quoted above begins with the phrase "in that" and continues to the end of the quotation from the order.

We do not agree with this contention. It is the duty of the State Industrial Commission on appeal from an order of the trial commissioner to make a new and independent order, or award based on the record. 85 O.S. 1941 §77; Amerada Petroleum Corp. v. Hester, 188 Okla. 394, 109 P. 2d 820. The State Industrial Commission followed the correct procedure in this respect.

It is next argued that the order is void because it did not make specific findings as required by section 77, supra, as construed by this court in McCarthy v. Forbes Painting & Decorating Co., 200 Okla. 555, 198 P. 2d 212, which follows the rule announced in Corzine v. Compress, 196 Okla. 259, 164 P. 2d 625. With this contention we do not agree. The order made is sufficient. Skaggs v. Bennett Van & Storage, Inc., 204 Okla. 32, 226 P. 2d 419; Mansfield v. Industrial Service Co., 203 Okla. 384, 222 P. 2d 373.

Finally it is contended that the evidence is undisputed that claimant sustained an accidental injury resulting in total permanent disability and that the error of the State Industrial Commission in denying an award is one of law to be independently reviewed by this court. In support of this contention claimant cites Kimsey Heating & Plumbing Co. v. House, 152 Okla. 200, 4 P. 2d 59, and related cases. They are not applicable. The medical testimony referred to above presented a disputed question of fact both as to the cause of the disability and the extent thereof. The finding of the State Industrial Commission that claimant did not sustain an accidental injury resulting in disability resolved the issues in favor of employer as against the employee, and where the finding of the State Industrial Commission in that respect is supported by the evidence, it is neither the province nor the duty of this court to disturb that finding. Sou-

der v. Mid-Continent Pet. Corp., 187 Okla. 698, 105 P. 2d 750; Hollis v. Mid-Continent Pet. Corp., 174 Okla. 544, 51 P. 2d 498; McDaniel v. Douglas Aircraft Co. Inc., 200 Okla. 221, 192 P. 2d 651.

The order denying award is sustained.

WELCH, CORN, GIBSON, DAVISON, HALLEY, JOHNSON, and O'NEAL, JJ., concur.