**WESTERN STATES CONSTRUCTION COMPANY and Tri-State Insurance Company, Petitioners,**

**v.**

**Grace STAILEY and the State Industrial Court, Respondents.**

**No. 43367.**

Supreme Court of Oklahoma.

Oct. 21, 1969.

Rehearing Denied Dec. 16, 1969.

Robert E. Shelton, Wayne B. Snow, Savage, Gibson, Benefield & Shelton, Oklahoma City, for petitioners.

Gus Rinehart, Oklahoma City, Dick Bell, Frank Seay, Seminole, G. T. Blankenship, Atty. Gen., for respondents.

JACKSON, Justice.

This is an original proceeding to review an order of the State Industrial Court allowing the respondent, Grace Stailey, claimant below, death benefits under the provisions of the Oklahoma Workmen's Compensation Act, for the death of her husband, Carl C. Stailey, while industrially employed by petitioner Western States Construction Company, respondent below. Parties will be referred to as they appeared before the State Industrial Court. The deceased, Carl C. Stailey, will be referred to as "deceased".

Deceased, Carl C. Stailey, on November 9, 1960, was employed and working for respondent, near Drumright, Oklahoma. An explosion occurred resulting in serious injuries to his head, body, neck, and limbs and permanent injuries to his brain. Several months later because of the mental condition of the deceased, Grace Stailey was appointed his legal guardian.

Grace Stailey as guardian of Carl D. Stailey filed a claim for his injuries in the State Industrial Court (Claim No. D–1532). The claim was settled on joint-petition and approved by the State Industrial Court on May 8, 1961. Respondent paid the sum of $15,000.00 in settlement, based on 500 weeks total and permanent disability at $30.00 per week.

Deceased was hospitalized for a period of almost two months after the accident. He returned to his home in Seminole, Oklahoma, about December 24, 1960. He was readmitted to the psychiatric unit of Hillcrest Medical Center, Tulso, Oklahoma, on January 16, 1961, because of his mental condition. He was observed and treated by Dr. U for several days. Dr. U found him, from the standpoint of his mental condition, to be "permanently and totally disabled."

During the years 1961 and 1962 deceased lived at his home in Seminole, Oklahoma. He was unable to do any type of work. He was attended at all times by his wife or other members of the family. His speech was faulty and his ability to walk and move about impaired. He spent most of his time watching television or having his wife read to him. On some occasions he would become violent and threaten his wife with bodily harm. During these years he was examined and treated frequently by his family doctor, Dr. B of the Jones-Bunch Clinic in Seminole.

On May 1, 1961, deceased, by order of the County Court of Seminole County was confined as a mental patient to the Central State Griffin Memorial Hospital, Norman, Oklahoma. He remained a patient in this hospital until August 1, 1961. During this period of time he was released several times for visits at his home in Seminole.

Deceased continued to have spells of illness. On Thursday December 6, 1962, he had a spell at his home in Seminole complaining of hurting in the back of his head and continued to get worse. His wife took him to the Jones-Bunch Clinic in Seminole where he was examined by Dr. J in the

absence of his regular doctor, Dr. B. He was put in one of the beds in the clinic. The next day, December 7, under the direction of Dr. B he was removed to the Seminole Municipal Hospital where he remained under the care of Dr. B until his death on December 20, 1962.

The case for death benefits was first tried in 1963 before Judge R, then a member of the State Industrial Court. Judge R on May 29, 1963, filed an order in the case holding that the death of the deceased was not causally related to his accident sustained on November 9, 1960, and denied the death claim of the claimant. Claimant appealed to the court en banc. The Court en banc, on March 3, 1965, entered an order vacating the order of Judge R entered on May 29, 1963, and remanded the cause "for further proceedings".

The case was retried before Judge V, a member of the State Industrial Court, on March 4, 1968. By agreement of the parties a transcript of the first trial including the evidence was admitted in evidence. No additional evidence was submitted at the second trial. On July 31, 1968, Judge V filed an order in the case holding in effect that the injury caused continuous disability and the death of Carl C. Stailey, deceased, on November 9, 1960. He entered an order awarding death benefits to the claimant. Respondents appealed to the Court en banc. The Court on October 31, 1968, affirmed the award entered by the trial judge. Respondents' Petition for Review is regularly before this court for hearing and disposition on its merits.

■ Respondents contend that as claimant, Grace Stailey, appeared as wife and legal guardian of Carl C. Stailey in the joint-petition hearing of the claim of Carl C. Stailey, for compensation benefits (D–1532) and is barred from asserting her separate and distinct claim for death benefits. The appearance of Grace Stailey in cause No. D–1532 was solely as legal guardian of Carl C. Stailey for the purpose of settling his claim for compensation. She was not appearing and could not have been appearing on her own behalf in settlement

of her claim for death benefits as such claim did not exist at the time the compensation claim was settled on joint petition. The claims are separate and distinct and the settlement of the compensation claim does not constitute a bar to the prosecution of the present claim for death benefits by the claimant, Grace Stailey. Viersen & Cockran Drilling Co. v. Ford, Okl., 425 P.2d 965.

■ Respondents contend that trial Judge V had no authority to enter an award in favor of the claimant at the second hearing of the case, for the reason that Judge R had entered an order at the first hearing denying the claim of the claimant and the same identical evidence was submitted at both hearings.

The State Industrial Court sitting en banc in reviewing the order of trial Judge R had authority to "issue such order, decision or award as it may deem proper, just and equitable." 85 O.S.1961, § 77.

■ In Bell v. J. H. Rose Trucking Co., Okl., 452 P.2d 141, we said:

"The Industrial Court sitting en banc on appeal is authorized 'to enter such award as was warranted by the evidence.' Sullivan-Anderson Well Servicing Co. v. Berry (1957), Okl., 312 P.2d 943. It is the duty of the court sitting en banc to review the record and enter such order as it 'may deem proper, just and equitable as between the parties.' Rodriquez v. Utilities Engineering & Construction (1955), Okl., 281 P.2d 946."

The Industrial Court sitting en banc vacated the order of Judge R and remanded the cause "for further proceedings."

The further proceedings were conducted before Trial Judge V. An opportunity was afforded the parties to submit any evidence either new or old they desired to submit. The parties agreed to submit the case on a transcript of the evidence submitted at the first hearing. Judge V was authorized to enter such order as he deemed proper. He was not required to adopt or follow the prior order entered by Judge R. He was authorized to "make a new and independent

order, or award based on the record." Bell v. J. H. Rose Drilling Company, Okl., 452 P.2d 141; Bryant-Hayward Drilling Company v. Cook, Okl., 439 P.2d 480; Edmonds v. Skelly Oil Co., 204 Okl. 471, 231 P.2d 360.

Respondents contend that the award in favor of the claimant is not sustained by the evidence.

Deceased sustained serious and permanent injuries to his brain and head on December 9, 1960. It is undisputed that he never recovered from such disability. Approximately three months after the accident at the request of the respondents he was examined by Dr. U who found him, from a mental standpoint, to be "permanently and totally disabled."

Dr. B, the family physician of the deceased, examined and treated the deceased during the last two years of his life and while he was in the hospital prior to his death. Dr. B testified that the brain injury sustained by the deceased in the accident was the contributing and precipitating cause of his death.

Dr. J examined the deceased on December 8, 1962, in a clinic operated by him with Dr. B, the day before deceased entered the hospital. He testified that while in the clinic the deceased sustained an epileptic seizure; that the head injury sustained by the deceased was at least the primary cause of his death.

An autopsy was performed on the body of the deceased by Dr. B and Dr. J the day after his death. Degenerated brain tissue was found in the right frontal lobe. The concluding paragraph of the autopsy report signed by Dr. B and Dr. J is as follows:

"Taking into consideration the severe brain damage which the above named received on 11–9–60, it is our opinion, after having him under our supervision and performing the autopsy that the injury to his brain was the direct cause of his death on 12–20–62."

Two doctors, Dr. S and Dr. L testified on behalf of the respondents. These doctors had not examined the deceased. They testified in answer to hypothetical questions based on studies made of hospital records, records made at the mental hospital in Norman, the autopsy report, and the testimony of Dr. B and Dr. J.

They both testified that the brain injury was in no way the cause of the death of the deceased and the primary cause was a pulmonary embolus and pulmonary infarction.

The medical evidence as to the cause of the death of the deceased is conflicting. The evidence is sufficient to support the findings of the State Industrial Court. It is not the province of this court to weigh the evidence to determine where the preponderance lies. Lee Way Motor Freight, Inc. v. Highfill, Okl., 429 P.2d 748.

We have held that in Workmen's Compensation cases the question of whether the disability or death is due to compensable injury or other cause is a question of fact to be determined by the State Industrial Court and its findings will not be disturbed by this court on review if there is any competent evidence reasonably tending to support such findings. Bossert v. Pittsburg Plate Glass Company, Okl., 405 P.2d 14.

Respondents contend that the testimony of Dr. B was based on the fact that the deceased sustained convulsions and paralysis which facts were not recorded in the doctor's records or the hospital records. Dr. B testified that the information relating to convulsions and paralysis was furnished by Grace Stailey, wife of the deceased at the time deceased was admitted to the hospital. Respondents do not contend that the convulsions and paralysis did not occur but merely that they were not recorded in the records of the doctor and the hospital.

There is evidence that such attacks occurred. Claimant, Grace Stailey, testified that deceased suffered spells and on the day he was taken to the clinic and later to the

944

hospital, suffered a sick spell, complained of pains in his head and kept getting worse.

Dr. J testified that the deceased suffered an epileptic seizure at the clinic immediately before he was moved to the hospital.

The hospital records admitted in evidence by agreement of the parties contain many references to deceased vomiting his food and medicine.

■ The statements made by Grace Stailey regarding the conduct of the deceased prior to his admission to the hospital were admissible. Allen Company v. Grubb, Okl., 442 P.2d 492. The testimony of Dr. J that deceased sustained an epileptic seizure immediately before admission to this hospital is competent and of probative value. Dr. S testifying for the respondents admitted that the occurrence of an epileptic seizure would be significant indicating an irritation to the brain, detected as a convulsion which could be associated with the brain injury sustained by the deceased in 1960.

■ The fact that these incidents were not recorded on the records of the doctor and hospital is not conclusive. The evidence furnishes ample predicate for the testimony of Dr. B and Dr. J that the death of the deceased was precipitated and directly caused by the brain injury sustained on November 9, 1960.

■ Lastly claimant contends that the autopsy report was inadmissible for the reason that the autopsy was performed without notice to the respondents. We know of no rule of law requiring the furnishing of notice of the performance of an autopsy to one who may have an indirect interest in the outcome of the autopsy. Respondents cite no case in support of their contention and we have found none. We find no merit in this contention.

Award sustained.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, HODGES, LAVENDER and McINERNEY, JJ., concur.